*Hartford,*
June, 1844.

Brown
*v.*
Slater.

### Brown *against* Slater and others.

Where *A*, in 1825, gave to *B* a writing in these words : " In consideration of *B's* becoming my wife, I promise to give her at the rate of one dollar *per* week from the date of our marriage, so long as she remains my wife"— [signed by *A* :] the contemplated marriage took place; and *B* lived with *A*, as his wife, until 1843, when *A* died; on a claim exhibited by *B*, to the commissioners on *A's* estate, for the sum due to her under the contract, it was held, 1. that commissioners upon insolvent estates have the powers of courts of law and of chancery; 2. that the court, in construing the language of a written instrument, may take into view the situation of the parties and the subject matter of the transaction; 3. that in this case, the contract being made in contemplation of marriage, and purporting to hold forth a benefit to *B*, a court of law would construe it as providing for the payment of a sum of money to her *after the termination of the coverture*, the amount to be ascertained by its duration; [one judge dissenting;] 4. *that however a court of law might treat this contract, a court of equity would enforce it*; consequently, the commissioners ought to allow the claim.

THIS was an appeal from a report of commissioners on the estate of *Elias Brown,* deceased, represented insolvent.

The appellant complained of the doings of the commissioners in rejecting her claim against such estate, amounting to 896 dollars.

She was the widow of the deceased, and claimed to be a creditor of his estate, by virtue of the following writing, signed by him : "*Farmington, October* 15th, 1825. In consideration of Mrs. *Nancy Hart's* becoming my wife, I promise to give her at the rate of one dollar *per* week from the date of our marriage, so long as she remains my wife. *Elias Brown.*"

Shortly after the date of this writing, the marriage was solemnized, and the parties lived together as husband and wife until his death, which was on the 10th of *January,* 1843.

At the time of the marriage, he was about sixty-eight years of age, and she about fifty-seven. His property, after his death, was inventoried at 1,912 dollars, 96 cents. The amount of claims against his estate, allowed by the commissioners, was 249 dollars, 31 cents. His pecuniary condition, at the time said instrument was executed, did not vary materially from what it was at the time of his decease.

On the 13th of *August,* 1833, he made his will, whereby he gave to his beloved wife, *Nancy Brown,* fifty dollars in money, and five sheep, to be paid her in six months after his

decease, or sooner, if she should want it. He also gave to her, during the time of her natural life, the use of one cow, one horse, one wagon, and one sleigh and harness, and two-thirds of his household furniture, and two-thirds of all his land and of his house and barn.

He left a daughter, named in the will, and four grand-children, all of whom are in straitened circumstances. His daughter did not live at home with him ; and since his marriage with the appellant, his family has consisted only of himself and her.

The appellant has no property, independently of what she may receive under the claim in question, and the provision made for her by the will. No payment has ever been made, by the deceased, on said contract, otherwise than by furnishing support, in the ordinary manner, to Mrs. *Brown,* as his wife.

The appellant is ready to release all her interest under the will, upon the allowance of her claim under the contract, in full.

Upon these facts, the case was reserved for the advice of this court, as to what judgment should be rendered thereon, and what instruction given to the court of probate.

*Fellowes* and *Matson,* for the appellant, contended, 1. That the writing of the 25th of *October,* 1825, was an ante-nuptial agreement, founded on a sufficient consideration, performed on the part of Mrs. *Brown.*

2. That this agreement was to be performed, on the part of *Brown,* the husband, after the termination of the coverture ; and was, therefore, valid, both at law and in equity. In the first place, such is the proper import of the language used. Secondly, if there was any ambiguity in the language, the rules of legal construction would give it this effect. A fundamental rule is, that the *intention* of the parties is to govern. Here a *benefit* to the wife was intended. But if the contract is to be performed during coverture, no benefit is legally secured by it to her. 2 *Sto. Eq.* 600. Another rule is, that a contract is to be construed so as to render it operative, rather than inoperative. *Pugh* v. *Duke of Leeds, Cowp.* 714. *Archibald* v. *Thomas,* 3 *Cowen,* 284. 2 *Com. on Contr.* 532.

3. That if the agreement is to be performed during the

*Hartford,*
*June, 1844.*

Brown
*v.*
Slater.

coverture, still it may be enforced in equity.   2 *Sto. Eq.* 599. 603. 607. 608.

4. That the legacy given to Mrs. *Brown* ought not to be deducted from the amount due on the agreement.

*Toucey* and *T. C. Perkins,* for the appellees, contended, 1. That the court, in construing this contract, are to look at the words used, and are not to resort to evidence of extrinsic facts, to give a construction to the instrument.

2. That the contract was to be performed during the coverture.   In the first place, the consideration, by the marriage, became past and executed.   There was nothing more to be done, in order to entitle the wife to demand the money. It was *debitum in præsenti,* and *solvendum in præsenti,* unless the payment was delayed, by the terms of the contract. Secondly, there is nothing in the contract, which postpones the payment until after the termination of the coverture. Not a word indicates this to be the intention of the parties, or will bear such a construction.   Thirdly, this was a provision or allowance, *during the coverture,* in contradistinction to a provision in lieu of dower, or in case of death or divorce. There is no reference to such an event.   Fourthly, if the husband had punctually given the wife, during the coverture, one dollar, at the end of every week, until his death, could she, or her administrator, recover the amount over again ? This is a decisive test.   This could be done, if her claim is well founded.   Fifthly, the case is precisely analogous to an annuity contract, upon a consideration paid, where the promise is to pay *A* a certain sum *per annum,* as long as he lives ; or to a life lease, with a certain rent *per annum ;* or to a contract of service for life, with monthly wages ; or to a contract to deliver straw, at the rate of three loads in a fortnight, during a specified period.   *Withers* v. *Reynolds,* 2 *B. & Adol.* 882. (22 *E. C. L.* 203.)   In none of these cases, is the payment to be deferred until after the lapse of the entire period covered by the contract.

3. That as the contract, in this case, was to be performed during the coverture, it was extinguished, by the marriage. 15 *Mass. R.* 111.   1 *Sw. Dig.* 28, 9.

4. That this consequence furnishes no good reason for giving the contract a different construction.   The rule re-

ferred to, is founded on a great principle of policy, firmly established by our law. The law cannot seek to defeat its own policy.

WILLIAMS, Ch. J. The defence to the claim of the appellant, is, that this was a contract, which was extinguished, by the marriage of the parties.

By the laws of this state, commissioners upon insolvent estates have the powers of courts of law and of chancery ; so that if this claim can be supported before either tribunal, it should have been allowed.

It is doubtless well settled, that if a woman takes for her husband a man who is indebted to her, the debt is thereby discharged or extinguished. *Co. Litt.* 264. *sect.* 445. But it is now equally well settled, that if a man about to enter into the marriage relation, as an inducement thereto, promises his intended wife to pay her a sum of money, or make other provision for her, after its termination, such contract will not be extinguished, by the marriage. *Smith* & ux. v. *Stafford, Hob.* 216. *Gage* v. *Acton, Com. R.* 67. S. C. 1 *Salk.* 325. S. C. 1 *Ld. Raym.* 515. *Milbourn* v. *Ewart* & al. 5 *Term R.* 381. Had then this contract expressly provided, that payment should be made on the termination of the marriage, it would have been governed by those cases.

But it is said, that this contract is of a different character ; that payment is to be made *during* marriage.

In the construction of contracts, we are to look at the intent of the parties, and give effect to that intent, if it can be done consistently with the principles of law. This, says Judge *Paterson*, is the great rule of interpretation. 4 *Dall.* 347. And if a contract admits of more than one construction, one of which will render it inefficacious, or nullify it, that construction should be adopted, which will carry it into effect. *Archibald* v. *Thomas*, 3 *Cowen*, 284. For there is no presumption against the validity of contracts. *Pugh* v. *Duke of Leeds, Cowp.* 714. Nor can we suppose, that the parties sit down to make a contract providing for a particular event, when that very event would make it void.

The appellees, however, say, that the court, in construing this contract, are to look at the contract itself only, and cannot go out of it, to discover what was the intent of the parties,

*Hartford,*
June, 1844.

Brown
*v.*
Slater.

by the words used. If by this is only meant, that parol evidence of intention is not to be given to explain a contract ambiguous on its face, it is correct. But we see not why the situation of the parties, and the subject matter of the transaction, may not be brought into view, to assist in determining the meaning of a particular expression. In *Sumner* v. *Williams*, 8 *Mass. R.* 214. the court say, nothing can be more equitable, than that the situation of the parties, the subject matter of their transactions, and the whole language of their instrument, should have operation, in settling the legal effect of their contract. And in *Wilson* v. *Troup*, 2 *Cowen*, 228, 9. it is said, by *Woodworth*, J., this extrinsic evidence is admissible, so far as to ascertain the circumstances under which the writing was made, and the subject matter to be regulated by it. So in *Milbourne* v. *Ewart*, 5 *Term R.* 381. 385. where a suit was brought upon a bond, and the defendants pleaded the intermarriage of the parties, and the plaintiff replied, that the bond was made in contemplation of marriage between the parties, and with intent that, if it took effect, the plaintiff should have the full benefit and effect thereof; it was objected, that such an agreement as was stated in the replication could not be let in to explain a deed; but *Ashhurst*, J. said, he saw no objection to the averment in the replication, for it appeared from the defendants' own showing, that the marriage was solemnized on the day when the bond bears date; and the averment of the plaintiff, that the bond was given in contemplation of marriage, and as a settlement on the wife, does not militate against the bond and condition; on the contrary, it explains and is in affirmance of the condition of the bond. But in this case, the writing itself explains all that is necessary to show the subject matter and circumstances of these parties.

It appears evident, that the parties contemplated an intermarriage, and that this contract was made in reference to it; and it purported to hold forth a benefit to the woman, by way of inducing her consent to it. In consideration of her becoming his wife, he promises to pay her a sum of money, the amount of which is to be determined, by the time which she continues to live with him as his wife, at the rate of one dollar *per* week. Now, when was this money payable? It is not contended, that it was payable immediately; but the

appellees say, it was payable weekly; the other party claims, it was payable at the termination of the term limited.

By giving the former construction, we say, that the parties made a contract, which was of no value, but which became void, when the very event happened which was to make it beneficially operative. It is said, in reply to this, they were willing to trust each other's honour. If this was so, we can see no possible object in reducing the contract to writing. It cannot be presumed, that the parties intended such a consequence. On the other hand, the parties must be supposed to have intended something, by this agreement—a benefit was intended to the woman; the sum they could not fix, because they could not tell the time she would spend; and they seem to have thought it reasonable, that it should be in proportion to the length of the time; that she should not receive the same sum, if she lived with him six months, or a year, as if she lived with him twenty years. They are evidently looking to a provision for her, when this union shall cease. He, therefore, stipulates to give her at the rate of one dollar a week—not a dollar a week, but *at the rate*. Now, had he made a contract with a labourer for six months, to pay him at the rate of ten dollars a month, it would have been one entire contract, terminating at the end of the six months. *McMullen* v. *Vanderlip*, 12 *Johns. R.* 165. *Reab* v. *Moor*, 19 *Johns. R.* 327. It must be evident, that the provision contemplated, is not for the immediate support of the wife; for *that* he was bound by the law to furnish; but it is a provision for her, when this legal support shall cease, and when she might suppose the legal provision would be insufficient. If it was intended to supply her wants, when the marriage terminated, nothing would be more natural than that the payment should then be made, and nothing more unnatural than that a provision intended for her support, and as a marriage settlement, should be agreed to be paid and received, at the end of each week of the connexion. In addition to this, we are called upon to believe, that they intended to make a contract, for the benefit of the woman, which might be literally executed, without her ever receiving more than one dollar therefor. By the construction claimed, the first one dollar paid would become the husband's; and then each weekly payment might be made, leaving the parties, at the end of twenty years,

neither richer nor poorer, than they were, at the end of the first week.

The question was asked, suppose the husband had actually paid her the one dollar *per* week during the coverture, could she then sue upon the contract? If the appellees are right in the construction they give to this contract, the money so paid would remain the money of the husband, as before, and the wife become a mere depositary of it. But if we adopt the other construction, the inducement held out in the contract, is fulfilled; a provision is made for the party, at the termination of the union, proportional to the length of the connexion; and this, by the rule prescribed in the contract. A majority of the court are of opinion, that this construction is entirely consistent with the language used, and may fairly be said to carry into effect the intent of the parties; and that this construction should be adopted, rather than one which makes the contract, at least at law, entirely worthless.

But, however this contract ought to be treated at law, we are all satisfied, that a court of equity will enforce it. For courts of equity, in furtherance of the manifest intentions and objects of parties, will carry into effect contracts of this character, though they might be avoided at law. 2 *Story's Eq.* 599. *sec.* 1370. Thus, where a woman, who owned lands, agreed with her intended husband, that, upon her marriage, she would convey said lands to him, in fee, and gave to him a bond to that effect, with condition, that she would, in case the marriage took effect, convey all her lands to him;—the marriage took effect; and the heirs of the husband brought a bill to carry the contract into effect; the wife claimed, that the bond was extinguished by the marriage; but the chancellor held, that the impropriety of the security, or the inaccurate manner of wording the bond, was not material; that this agreement, being for a valuable consideration, should be executed in equity. He adds, that it is unreasonable, that the intermarriage, upon which alone the bond was to take effect, should itself be a destruction of the bond. *Cannel* v. *Buckle,* 2 *P. Wms.* 243. S. C. 2 *Eq. Ca. Ab.* 23. *pl.* 24. And this case is recognized as law, by Judge *Story.* It is not easy to see in what respect this case differs, in principle, from the one before us, if it is admitted, that this is payable during marriage. There, as well as here, the agreement was in consid-

eration of a proposed marriage; there, as well as here, it was to be done, only in case the marriage took effect; and, of course, was to be done, when that event happened; that is, during the marriage. If it was unreasonable in that case, that the intermarriage, upon which alone the bond was to take effect, should be a destruction of the bond given by the wife, it surely is not less unreasonable, that a writing, given by the husband, to induce this marriage, should be nullified, by the marriage itself. We think, therefore, we are on sure ground, when we say, a court of equity can give relief.

The case states, that the judge below intimated an opinion, that the sum left the widow, by the will, might be deducted from the sum to be allowed on this note. This was under the idea, that this, though in form, a debt, was, in fact, an informal agreement, by which, the deceased stipulated to provide for his wife, at the rate there mentioned; and if he had done this by will, and she elected to receive it, a court of equity would not permit her to claim both, but would consider it as a fulfilment of the stipulation in this writing.

But, as the appellant has expressly agreed to accept what is given by the will, as payment, so far as it can be available, the court give no opinion upon this part of the case, but advise the superior court to disaffirm the decree of probate.

In this opinion, CHURCH, STORRS and HINMAN, Js. fully concurred.

WAITE, J. Was of opinion, that upon a fair construction of the contract, the wife was to receive the one dollar a week, for her personal benefit, during the coverture: that there was nothing in the agreement, indicating an intention that it was to be for her support, during her widowhood, if she survived him, or for the benefit of her legal representatives, in the event of his surviving her. And with respect to such representatives, the case showed nothing which would lead to an inference, that she wished to provide for them.

Decree of probate disaffirmed.