## Case No. 6,887.

### HUNT v. DANFORTH.

[2 Curt. 592.] [1]

Circuit Court, D. Rhode Island. June Term, 1856.

BILL IN EQUITY — ADEQUATE REMEDY AT LAW — SEPARATE CASE OF A MARRIED WOMAN—COVENANT RUNNING WITH LAND—INSOLVENCY.

1. The provision in the judiciary act (1 Stat. 82) § 16, that a suit in equity shall not be sus-

[1] [Reported by Hon. B. R. Curtis, Circuit Justice.]

tained when there is a plain, adequate, and complete remedy at law, is only declaratory of what would otherwise be held in equity. A feme covert has not such a remedy at law to recover money held to her separate use.

[Cited in Re Sabin, Case No. 12,195.]

[Cited in Shepley v. Atlantic & St. L. R. R. Co., 55 Me. 404.]

2. An assignment of all the right, title, and interest of the lessee, conveys his right to compensation for new erections on the land, covenanted by the lease to be paid for by the lessor; for such a covenant runs with the land.

[Cited in Ecke v. Fetzer, 65 Wis. 62, 26 N. W. 266.]

3. A representation of insolvency does not deprive a citizen of another state of the right to bring a suit against the administrator in a court of the United States, and the presentation to the commissioners, and the adjudication of a claim of which they have not jurisdiction, is not a bar.

[Cited in Demeritt v. Exchange Bank, Case No. 3,780; Green v. Collins, Id. 5,755; Edwards v. Hill, 8 C. C. A. 233, 59 Fed. 725.]

4. In Rhode Island, commissioners of deceased insolvents have not jurisdiction of merely equitable claims.

This was a bill in equity, which came on to be heard on a demurrer. The substance of the stating part of the bill was as follows:—

"Mary Hunt, of the city of Worcester, in the county of Worcester, in the commonwealth of Massachusetts, a citizen of the state of Massachusetts, wife of Stephen W. Hunt, of said Worcester, by her next friend, John W. Wetherell, of the city and county of Worcester, in the commonwealth of Massachusetts, a citizen of the state of Massachusetts, her husband, Stephen W. Hunt, joining her therein, he being of said county and commonwealth, a citizen of said state of Massachusetts, brings this, her bill, against Walter R. Danforth, of the city and county of Providence, and state of Rhode Island, and a citizen of the state of Rhode Island, &c., executor of the last will and testament of Burrington Anthony, deceased, late of said city and county of Providence and state of Rhode Island, &c., late a citizen of the state of Rhode Island, &c. And thereupon your oratrix, as aforesaid, complains and says, that on the 21st day of March, A. D. 1840, she being then a resident of Oxford, in the county of Worcester aforesaid, and being then sole and unmarried, being the widow of Benjamin T. Town, entered into a certain indenture of three parts, in contemplation of marriage with Stephen W. Hunt, then of Providence, aforesaid. Your oratrix being the party of the first part, said Stephen being the party of the second part, and Ira M. Barton, of said Worcester, being the party of the third part. Whereby it was agreed under their respective hands and seals, that said Mary and Stephen should, during their intermarriage, each hold their respective estates with all the interest, rents, and profit therefrom accruing, separate and apart from the other. That by said indenture your oratrix gave, granted, sold, and conveyed unto said Barton, the party of the third part, and

to his successors in said trust, certain property (as by said 'nstrument will more fully appear, a copy of which, marked 'A,' is hereto annexed and made part of this bill, the original of which will be produced here in court when required) to the sole and separate use of your oratrix, her heirs and assigns for ever in trust, among other things that he or they shall, during the intermarriage of the said Mary, convey, pay over, and disburse the same for her use.

"And your oratrix further says, that on the twenty-second day of March, A. D. 1840, she was legally joined in marriage to the said Stephen W. Hunt, at Thompson, in the state of Connecticut, and that she has ever remained and now is his wife.

"And your oratrix further says, that upon the settlement of her deceased father's estate, the said Barton, by virtue of the provisions of said indenture, received large sums of money as the distributive share of your oratrix therein; and at the request of your oratrix said Barton did pay over to her the sum of $600, on the 8th day of February, 1841, and on the 10th day of the same month the further sum of $403.45, and various other sums at various other times, which she received as her own separate estate and held and appropriated as such; that thereafter, namely, on or about the sixteenth day of November, 1841, she loaned to Nahum Sibley, then of Oxford, in the state of Massachusetts, the sum of $800, and thereafter, as security for the repayment to her of said sum received from said Sibley in her own name and as her sole property, a deed of a certain estate in said Providence with a claim of defeasance therein; and said Stephen, under his hand and seal on the back of said deed declared that said sum of $800 was paid by your oratrix out of her sole and separate estate, and covenanted that said deed should be held by her as her sole and separate estate in her individual right and capacity, all which will more fully appear by reference to the original of said deed and covenant, which your oratrix stands ready here to produce. A copy of which, marked 'B,' is hereto annexed and made a part of this bill of complaint.

"And your oratrix further says, that on the 14th day of October, 1837, an agreement of lease was made and entered into between James Fenner, of Providence, of the one part, and Lyman Cady, and said Stephen, both of said Providence, of the other part, whereby the said James hired, leased, and to farm let, for and during the term of ten years from and after the first day of October, 1837, to the said Lyman and Stephen, the lot of land on North Main street, in said Providence, covered by the old tavern house and as occupied by said Lyman, with certain reservations, additions, and conditions, as by the copy of said lease hereto annexed and made part of this bill, marked 'C,' will more

fully appear. That among other things agreed therein, it was agreed that if said Lyman and Stephen, or their assigns, should erect any house or building for the express use of the hotel or tavern on said premises, that the same may be removed at their own expense and cost at the end of said lease, or the same may be valued by arbitration as therein provided, and that the said James may either buy said barn or building at such valuation, or allow the same to be removed at his option. That the parties to said agreement, under their hands and seals, bound themselves, their heirs, &c., to the faithful performance of the agreements therein contained.

"And your oratrix further says, that thereafter, and before the first day of April, 1843, the parties of the second part to said lease did erect at their own expense certain buildings upon said leased property, for the express use of the hotel or tavern on said premises, which said buildings were of great value, namely, of the value of $800.

"And your oratrix further says, that on the 7th day of March, 1838, said Lyman, by his deed of that date, under his hand and seal, a copy of which is hereto annexed, marked 'D,' and made part of this bill, for the considerations therein mentioned, conveyed, assigned, sold, set over, and delivered to said Stephen all the interest he, said Lyman, had in and to said lease from James Fenner, hereinbefore described, and one undivided half part of the buildings erected upon the leased premises under the conditions of said lease, to be held by him, the said Hunt, his heirs and assigns for ever, as by reference thereto will more fully appear. That said deed last named contained a claim of defeasance, and that the condition therein named never happened, and that the property rights and interests of said Lyman in and to said lease afterwards vested absolutely in the said Hunt before the first day of April, 1843.

"And your oratrix further says, that on the 1st day of April, 1843, she conveyed to Stephen Crary and Addison Livermore, both of said Providence, by her deed of that date, her said husband joining her therein, under their hands and seals, all her right and title in and to the property conveyed by Nahum Sibley to her, as hereinbefore described, for the considerations therein named, the said Crary and Livermore paying to her said husband the sum of $800 therefor or releasing her said husband from the debt, or a portion thereof, owed by him to them for certain moneys advanced on articles furnished by them to him for the hotel or tavern kept by him upon said leased premises, as by the said deed will more fully appear, a copy of which is hereto annexed, marked 'E,' and made part of this bill. That the said Stephen, in consideration thereof, and for other valuable considerations there given by your orator to him, executed under his hand

and seal a deed of trust to Burrington Anthony, then of said Providence, on the 1st day of April, 1843, whereby said Stephen granted, assigned, transferred, and set over to said Anthony, his heirs and assigns, the sa'd lease from said James, which was at and before that date vested in said Stephen and all said Stephen's right, title, interest, claim, or demand therein in trust, for the sole use and benefit of your orator, her heirs and assigns, it being stated in said deed that your orator having transferred certain property standing in her name for the purpose of paying certain claims due from said Stephen to individual creditors, was the true consideration of said transfer, as will more fully appear by said deed when produced, a copy whereof is hereto annexed, marked 'F,' and made a part of this bill.

"And your oratrix further says, that the said Anthony accepted of said trust, took possession of the property therein conveyed in his capacity of trustee of your oratrix; that he managed said property, and paid over to her the rents and profits thereof, until the expiration of said lease.

"And your oratrix further says, that the said James Fenner, died intestate, in Providence aforesaid, on the —— day of ——, 184-, that upon due appl'cation to the municipal court of said Providence, exercising probate jurisdiction therein, Samuel Dexter, of Providence, was appointed administrator on the estate of said James; that after the expiration of said lease, in pursuance of its provisions, arbitrators were duly appointed to estimate the value of the buildings erected on said premises. as contemplated by said lease; that said arbitrators affixed a value to said buildings, and the said Dexter, in his said capacity, as administrator, elected to purchase the same. That said Dexter, on or about the 21st day of April, 1848, paid to said Anthony the sum of nine hundred and thirty dollars and fifty cents, or about said sum therefor, which said Anthony, in said capaci'y of trustee for your oratrix, under the aforesaid deed of trust, received for the sole use and benefit of your oratrix; and the said Anthony, by his deed, bearing date the eighth day of April, 1848, bargained, sold, set over, and delivered to the heirs, or some of them, of the said James Fenner, the property named in said deed, being a part of said trust prcperty as by the said deed when produced, will more fully appear, and which the compla'nant sta'ds ready to produce in court when required. a copy of which is hereto annexed, (G,) and made part of this bill.

"And your oratrix further says, that the said Anthony neglected and refused, in breach of his trust aforesaid, to pay to her, or to any one, for her account, the said moneys, with the interest thereon accruing, but withheld the same, from your oratrix, unlawfully, and against equity and good conscience until his death. That said Anthony died in said Providence, on the —— day of ——, 1853. That he left a last will and testament, which was duly proved in the proper court, that Walter R. Danforth, of said Providence, the respondent, was named in said will the executor thereof, and as such, was duly qualified to act, and gave bond according to law. That said respondent, represented to the municipal court of said city, that the estate of said Anthony was insolvent, whereupon commissioners were appointed, according to law, to receive, hear, and determine, on the claims against said estate. That the claim of your said oratrix was presented to said commissioners, and by them rejected; that your oratrix gave notice, as by law required, of her determination to have her claim determined at common law, and brought and prosecuted her action at law therefor, at the June term of this circuit court, 1855, and the said executor has neglected and refused, in breach of his said trust, to pay to her the moneys which have come to his hands, or passed under his control, in pursuance of said deed of trust of April 1st, 1843, with the interest accruing thereon, though often requested, and which he ought to do, all which actings, doings, pretences, and refusals tend to her manifest injury and loss in the premises, and are contrary to equity and good conscience."

The substance of the instruments annexed to the bill being correctly set out, it is not necessary to repeat any of them, save the lease, and assignment thereof, the terms of which are material.

"Lease.—James Fenner to Cady and Hunt.

"This agreement of lease made and entered into by and between James Fenner, Esq., of the one part, and Lyman Cady and Stephen W. Hunt, of the other part, witnesseth, that said James, for and in consideration of the rents, agreements, and covenants hereinafter contained, hath, and by these presents, doth hire, lease, and to farm let for and during the term of ten years from and after the first day of October instant, to them the said Lyman and Stephen, their heirs and assigns, the lot of land on North Main street in said Providence, covered by the old tavern house, and as occupied by said Lyman, reserving from said lease, all the shop or cellar part under said old tavern, excepting so much as is contained in the following lines, namely, (here follows a description of the land.) And the said Lyman and Stephen, promise and agree, that they will at their own cost and expense, take down and remove the old building now on said lot and thoroughly lay a new foundation of stone, laid in lime mortar, of sufficient strength and durability to bear three stories of brick above the basement or cellar ceiling, and, also, to lay a drain of stone or brick of proper dimensions and connect the same with the public

drain; and, also, at their own cost and expense, to erect an entirely new building three stories high above the basement ceiling of the same length of the old house, but two feet wider; the first story to be of brick, nine feet in the clear between joints, with walls eleven inches thick, to be laid in lime mortar, the other two stories to be of wood. Also, to build a kitchen north of the house and adjoining it, not to be extended further west than the south-east corner of the building now occupied by Oliver Mason, as a shoe store, to build and erect in said kitchen the fixtures and apparatus as represented in a certain plan or drawing furnished by Clapp and Warren, and now in possession of said James, to complete the piazza and all the rooms and apartments in strict conformity with said plan or drawing, of prime materials, in a good workmanlike manner, under the direction of E. J. Mallett, Esq., for and in behalf of said James; the flight of steps from the street up the piazza to be of hammered granite or freestone. And the said Lyman and Stephen promise and agree, at their own cost and expense, to keep all the above described and other leased buildings on the premises specified, in good order during the continuance of this lease, and when this lease shall cease, or expire, to surrender up quiet and peaceable possession of the same to the said James, his heirs or assigns, in as good order and condition as when the same were furnished, the ordinary wear and tear of time only excepted. And said Lyman and Stephen are to set up no demand or claim for any part or parcel of the fixtures, buildings, or improvements on said premises, but the whole is to revert to the said James and his assigns, in same manner as if erected by him or them. It is however understood and agreed, that if said Lyman and Stephen or their assigns, should erect any house or building for the express use of the hotel or tavern on said premises, that the same may be removed at their own expense and cost, at the end of this lease, or the same may be valued by arbitrators, one by one party to this instrument, and one by the other party, and they two shall select a third, and said James may either buy said barn or building at such valuation, or allow the same to be removed at his option. And if said Lyman and Stephen shall fail to complete the work described, in conformity with the plan and drawing above referred to, then so much of the work as may be done or executed, shall revert to the said James, and become his property without any cost or charge, and as damages, said Lyman and Stephen promise and agree to pay to said James or his assigns any sum of money which may be necessary to fully complete the work as above specified. And it is further agreed and understood, (and this lease is made and executed on this express condition,) that if at any time before the expiration of the ten years aforesaid, the said James or his assigns shall desire to sell the premises above described, or to lease the whole of the estate, or a greater portion than is contained in this lease, so as to deprive the lessees of the privilege contained herein before mentioned, then, and in that case this lease to cease and determine, and said Lyman and Stephen or their assigns are to surrender quiet and peaceable possession of the premises to the said James or his assigns, he or they first paying therefor such value or sum of money as may be adjudged right and fair, by arbitrators chosen in same manner and form as above recited, said value to be assessed, (not on the cost, but) on the actual value of the improvements, &c., at the time the said James or assigns may reënter and possess the same, and it is further agreed and understood that any partial damage by fire or otherwise to said buildings, shall be repaired by said Lyman and Stephen at their own cost, but if the damage shall be so great, as in the opinion of said James or his assigns, that the buildings are unworthy of repair, then this lease to cease and determine; no privilege of light is to be claimed by the lessees on the north side of the new building, and the space north may be improved or otherwise occupied at the pleasure of said James or his assigns. Now, in consideration of the aforesaid lease and the premises described, the said Lyman and Stephen jointly and severally for themselves, their heirs and assigns, agree and promise well and truly to pay in specie or its equivalent, to the said James or his assigns, an annual rent of eight hundred dollars for the first six years, and of one thousand dollars for the last four years, in equal quarterly payments, commencing on the first day of October, inst. and payable on the first day of October, January, April, and July, in each and every year during the continuance of this lease, and also to allow and secure all the manure which shall be made on the premises, to him the said James, or his assigns, and by him or them to be carted away or removed at their convenience; and the said James may re-enter and take possession of all the premises herein above described, and hold and keep them as his own without any cost or charge; and this lease shall cease and determine if the said Lyman and Stephen or their assigns shall neglect or refuse to pay the rents above mentioned, in the sums and at the times, and in the manner specified, or shall otherwise fail to do and perform the covenant and agreements specified and recited. To all of which we mutually agree, binding ourselves, our heirs, executors, administrators, and assigns; and in testimony of the same, we hereunto have affixed our hands and seals,

this 14th day of October, eighteen hundred and thirty-seven. James Fenner. (L. S.) Lyman Cady. (L. S.) Stephen W. Hunt. (L. S.)

"In presence of A. V. Dike. Thomas White."

"Trust Deed.—S. W. Hunt to B. Anthony.

"Know all men by these presents, that I, Stephen W. Hunt, of the city and county of Providence, in consideration of the sum of eight hundred dollars, to me paid by Burrington Anthony, of said Providence, the receipt whereof is hereby acknowledged, do hereby grant, assign, transfer, and make over to the said Burrington Anthony his heirs and assigns, the within lease, and all my right title, interest claim, and demand therein subject to the payment of the ground-rent upon which said buildings stand, to have and to hold the same in as ample a manner as I, the said Stephen W. Hunt, might hold and enjoy, by virtue of said lease, and not otherwise, in trust for the sole use and benefit of my wife Mary Hunt, her heirs and assigns; the said Mary Hunt, having transferred certain property standing in her name for the purpose of paying certain claims due from me to individual creditors, is the true consideration of this transfer. In witness whereof, I have hereunto set my hand and seal, this 1st day of Aplrl, A. D., 1843. Stephen W. Hunt. (L. S.)"

CURTIS, Circuit Justice. Mrs. Mary Hunt, by her next friend, her husband also joining, brings this bill, against the executor of Burrington Anthony, to enforce the execution of a trust expressly declared by the latter in his lifetime in her favor for her sole use. The bill is demurred to; and the first ground taken in support of the demurrer is, that as the bill shows that a liquidated sum of money is due from the estate of the testator, the remedy is exclusively at law by an action for money had and received in the joint names of the husband and wife.

The provision of the 16th section of the judiciary act of 1789 (1 Stat. 82), that suits in equity shall not be sustained when there is a plain, adequate, and complete remedy at the common law, is merely declaratory, and made no change in equitable remedies; to bar which, the remedy at law must be as efficient to secure all the equitable rights of the complainant, as that in equity. Boyce v. Grundy, 3 Pet. [28 U. S.] 210. The right of a feme covert to receive and enjoy a sum of money to her separate use, cannot be deemed sufficiently protected by a suit at the common law in the joint names of her husband and herself. Such a suit reduces the chose in action to his possession, not to hers. And so far from its being the only remedy for the recovery of money due to the wife under a trust for her sole use, I apprehend a court of equity would enjoin the husband, on the application of the wife, from prosecuting such a suit, if he were to commence one. Moreover, this is the case of an express trust; and though the bill avers that a particular sum was obtained by the trustee from the sale of the trust property, yet an account must be taken of the proceeds of the sale, and of any allowances claimed for the trustee by his executor.

The next objection is, that the assignment to Anthony in trust for the complainant, did not convey the right of the lessee to the buildings, or to be paid for them by the landlord, under the special contract contained in the lease. I am of opinion it transferred all the rights of the lessees, and among others, the right now in question. The covenant of the lessor to purchase the building at a valuation, or allow it to be removed, being a covenant which touched the thing demised, namely, the messuage and land, and affected its mode of occupation, was a covenant which ran with the land. It is not necessary that the particular subject of the covenant should be in esse, to cause it to run with the land. In Bally v. Wells, Wilm. 344, Lord Chief Justice Wilmot says of such covenants, if they relate to a thing not "in esse," but yet the thing to be done be upon the land demised, as to build a new house, or wall, the assignees, if named, are bound by the covenants. So a covenant to apply insurance money to rebuild, runs with the land. Vernon v. Smith, 5 Barn. & Ald. 1. And the rules laid down in Spencer's Case, 5 Coke, 17, lead to the same result. The right to the benefit of this covenant of the lessor, therefore, passed to the assignee by the assignment of the lease, and the money received by virtue of the covenant was received by the assignee in trust for this complainant.

The remaining objection grows out of the fact that the estate of Burrington Anthony has been represented insolvent by the executor, to the probate court of the state, and that Mrs. Hunt, the complainant, through her attorney, presented this claim to the commissioners, appointed to receive and report upon claims against the estate, and it was rejected by them. It was rightly conceded at the bar, that the mere fact that an estate has been represented insolvent, does not prevent citizens of other states from coming into this court to establish their claims. No state law can, proprio vigore, deprive this court of jurisdiction conferred by the constitution and laws of the United States. Suydam v. Broadnax, 14 Pet. [39 U. S.] 67, is in point; and has been affirmed by a decision made by the supreme court at the last term.

But it is insisted that the jurisdiction of the commissioners was concurrent with that sought for in this case; and the complainant having voluntarily submitted to that jurisdiction and had a decision against her,

is barred. The statute of Rhode Island (P. L. 253, etc.), after providing for the appointment of commissioners to receive and examine all claims of creditors, further says, (section 5,) that notwithstanding the report of the commissioners, any creditor whose claim is wholly or in part rejected, may have the same determined at common law, in case he shall give notice thereof in writing in the clerk of probate's office, within twenty days after such report shall be received, and bring and prosecute his action as soon as may be. The 7th section provides, that "When a claim shall be settled by referees, or in the course of the common law as aforesaid, execution shall not issue," &c. It thus appears, either that the only claims which could be determined by the commissioners were such as could be tried according to the course of the common law, or that their determination of all equitable claims was to be final, and no further proceeding could be had thereon before any tribunal at the instance of the claimant. It is extremely improbable that the latter was intended by the legislature. No valid reason is perceived why the claimant of an equitable right should be concluded by the report of the commissioners, when all legal rights are expressly allowed to be prosecuted before the ordinary judicial tribunals, as if no report had been made thereon. And this improbability is greatly strengthened by the sixth section, which enacts that, "In case the executor or administrator shall be dissatisfied with any creditor's claim allowed by the commission, and shall give notice thereof in the clerk of probate's office, and also to the creditor within twenty days as aforesaid, such claim shall by the court of probate, be stricken out of the commissioner's report." It can hardly be supposed, that a creditor whose equitable claim had been disallowed, was not to have power to object and prosecute further, while the administrator or executor had power to object if it was allowed, and thus annul the report in his favor; that a report, final and conclusive, upon one party should be of no avail against the simple objection of the other party. But further, suppose an equitable claim having been allowed and stricken out on the objection of the administrator; how is the creditor to proceed? The act has provided only for the trial of claims before the courts, in the course of the common law. This appears not only from the fifth section, which grants to the creditor only a right so to have his claim determined, but also from the seventh section, which regulates what is to be done when the amount of the claim shall have been ascertained; and which confirms its provisions to "claims settled in the course of the common law." So that if the commissioners have jurisdiction to decide on merely equitable claims, their report against the claimant binds him; but their report in his favor may be annulled by the objection of the administrator; and as such a claim cannot be prosecuted according to the course of the common law, it is finally defeated by that objection. No one can suppose such is the law of Rhode Island, and the only alternative is to hold, that of merely equitable claims the commissioners have no jurisdiction.

Though at first view, this conclusion may seem to present an anomaly, in the system for the distribution of estates of persons deceased insolvent, on further consideration, it will be found not of much practical importance; because a court of equity, in which alone the claims under consideration can be prosecuted, can so mould its decrees as to prevent any disturbance of the rights of other creditors, and to protect executors and administrators from exposure to injustice. I believe it to be true, also, that at the time this system was framed, merely equitable claims not cognizable at the common law, were but little considered in the legislation of the state, and that it should not excite surprise that in this matter no special provision was made for them. I am not aware that the supreme court of Rhode Island has ever considered this question. I should have been much relieved to find that learned court had done so. In Connecticut, it was held in Brown v. Slater, 16 Conn. 192, that commissioners on insolvent estates have the powers of courts of equity as well as of courts of law. But the statutes conferring their power differed materially from those of Rhode Island.

Having come to the conclusion that the commissioners had not jurisdiction over a claim which cannot be prosecuted according to the course of the common law, and as this claim by a married woman in her own name, for an account of property held by a trustee for her separate use could not be thus prosecuted, it follows that the presentation of this claim by her, and its disallowance by the commissioners, cannot affect her right to go into a court of equity for relief. If any authority be necessary in support of this last position it may be found in Varick v. Edwards, 1 Hoff. Ch. 412, where the vice chancellor has carefully examined the cases. His decision, that a judgment of a court of common law, upon a claim which is exclusively of equitable cognizance, does not bar relief in equity, is supported both by authority and principle.

My opinion is, that the complainant has not submitted to a jurisdiction which could act on her claim; and that the case stands, as if it had not been presented to the commissioners. The demurrer is overruled; and the defendant must answer.

[See Case No. 6,888.]