CHARLES B. CLARK'S APPEAL FROM COMMISSIONERS.

New Haven Co., June T., 1889. ANDREWS, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

Where there is a legal consideration for a contract the court will not, in
the absence of fraud, inquire into its adequacy.

S, who was an unmarried man and in very poor health, had made his home
at intervals with B, who was a relative and poor, paying an agreed
price per week for his board when there. He had some landed prop-
erty and live stock, but little money. While there both B and his wife
rendered him various small services, particularly in the care of him
when ill, and he stated to them that he should compensate them for it,
and they expected him to do so. About two months before his death
he came to the house and requested B to draw a note for $700 payable
to B, which he did, and he examined and signed it and delivered it to
B, stating that he desired them to have it for what they had done for
him; that if he got well he should want it back, but if he died they
were to have it. The note remained in B's hands till the death of S.
There was no claim that there had been any fraud in procuring it.
Held that the note had a valid and sufficient consideration, and that B
was entitled to recover the amount of it from S's estate.

[Argued June 14th—decided September 13th, 1889.]

APPEAL from the doings of commissioners on the estate
of Sheldon Clark in disallowing a claim presented against
the estate by the appellant; taken to the Superior Court in
New Haven County, and heard before Fenn, J. The court
made the following finding of facts:

During the spring, summer and fall of 1886 Sheldon
Clark boarded at intervals in the family of Charles B. Clark,
the appellant, an aggregate of several weeks, leaving the
last time January 31st, 1887, paying Charles for board the
agreed sum of three dollars per week. He owned a farm
near by, on which he kept oxen and other cattle. At one
time Sheldon remained in the family of Charles a week as a
guest, no charge being made, and Charles had the use of his
oxen, which would have been a fair equivalent, and for
which no charge was made by Sheldon. It was not, how-

ever, said by either that one of these items should offset the other. Charles was a second cousin of Sheldon, and was quite poor. Sheldon had some landed property and live stock, but little money and small income. Except as above appears, accounts were kept by Sheldon and Charles, in which Charles was credited with the board, and charged with the use of the oxen, which he sometimes used. On June 15th, 1887, Sheldon and Charles looked over their accounts, and Sheldon made in his memorandum book the following entry:

" June 15th, 1887, looked over with Charles, balance due me, . . . . . . . . $2.51
Looked over team work, . . . . . 6.00
_____
$8.51 "

This sum was not disputed by Charles, but was afterwards paid by him, a portion in October, 1887, and the balance, after Sheldon's decease, to his executors. No later action calling for debit or credit appears to have taken place after June 15th, 1887. During the times Sheldon boarded in Charles's family Charles's wife was kind, and on several occasions did him favors, such as mending or washing articles of clothing. On one occasion he had a hemorrhage, and she cared for him; the hemorrhage also caused some injury to the bed and carpet. Occasionally also Charles would take care of the cattle for him, or do some small chores about his place. No charge was made for any of these things, but Sheldon appreciated them, and on several occasions said to Charles and his wife that they should have their pay for what favors they were doing him. And in consequence of such statements they believed that the small services which they continued to perform would be suitably recognized and remunerated by Sheldon. I do not find that they ever thought of them as debts or legal obligations, or considered whether they would or would not be such, but there was a complete confidence on this point, that Sheldon would, in the exercise of his own judgment, do what was a full equivalent in return, and on this they solely relied, and

there was a full intention on his part to do so. On the 29th day of August, 1887, Sheldon, being ill of the disease of which he died on the 19th day of October, 1887, came to the house of Charles and said to Mr. and Mrs. Clark that he wished them to draw a note for seven hundred dollars, which he desired them to have for what they had done for him. Mrs. Clark said—" Why, Sheldon, that is too much; that is more than we deserve." He said—" I want you to have that if I die, but if I get well I want the note back, and I will then pay you what is right." The following note was accordingly drawn:—

" BEACON FALLS, CONN., Aug. 29th, 1887.
" On demand, for value received (to my full satisfaction), I promise to pay to Charles B. Clark or order seven hundred dollars without interest.         SHELDON CLARK."
" Witness : MRS. CLARA CLARK."

The note was examined and approved by Sheldon, and signed, being witnessed by Mrs. Clark at his request, because he said it was partly on account of what she had done, and delivered to Charles, in whose hands it has ever since remained unpaid, and was by him duly presented to the commissioners on Sheldon's estate within the time limited for the presentation of claims, and disallowed by them. On the 6th day of October, 1887, Sheldon made his will, which was duly probated, and under which his estate is being settled. By this will he gave to Charles B. Clark one sixth of the residue of his estate, after having devised his real estate to other relatives.

Upon these facts the case was reserved for the advice of this court.

*V. Munger* and *H. L. Hotchkiss*, for the appellant.

1. There was sufficient consideration for the note. The slightest consideration will support a promise. *Sturlyn* v. *Albany*, Cro. Eliz., 67 ; *Haigh* v. *Brooks*, 10 Adol. & El.,

309; *Barnum* v. *Barnum*, 8 Conn., 469; *Clark* v. *Sigourney*, 17 id., 511; 1 Wait's Actions & Defenses, 93.

2. The services were rendered under an expectation that they would be paid for, and with an intention on the part of the party benefited to pay for them. Under these circumstances there would be an implied promise to pay what they were worth. Wood's Master & Servant, § 62; *Bryant* v. *Flight*, 5 Mees. & Wels. 114; *Trustees of Farmington Academy* v. *Allen*, 14 Mass., 175. The law presumes a request in such a case. *Lewis* v. *Trickey*, 29 Barb., 387; *Gallaher* v. *Pell*, 8 Hun, 87; *Van Schoyck* v. *Backus*, 9 id., 69; *Hatch* v. *Purcell*, 21 N. Hamp., 544; *Nay* v. *Walker*, 65 Mo., 17; *Pitts* v. *Pitts*, 21 Ind., 309. Such an express promise is good after such services have been rendered. Wood's Master & Servant, §§ 69–71; *Watkins* v. *Richmond College*, 41 Mo., 302; *Boothe* v. *Fitzpatrick*, 36 Verm., 681; *Goodwin* v. *Union Screw Co.*, 34 N. Hamp., 378; *Christie* v. *Sawyer*, 44 id., 298; *De Wolf* v. *Chicago*, 26 Ill., 443; *Doty* v. *Wilson*, 14 Johns., 378; *Snyder* v. *Castor*, 4 Yeates, 553.

3. The following recent cases sustain the principle we are asserting and many of them closely resemble the case at bar. *Wolford* v. *Powers*, 85 Ind., 294. Here the subject is exhaustively treated. *Train* v. *Gold*, 5 Pick., 380; *Dean* v. *Carruth*, 108 Mass., 242; *Worth* v. *Case*, 42 N. York, 362; *Earl* v. *Peck*, 64 id., 596; *Cowee* v. *Cornell*, 75 id., 91; *Miller* v. *McKenzie*, 95 id., 375; *Shepard* v. *Rhodes*, 7 R. Isl., 470; *Hempler* v. *Schneider*, 17 Mo., 258; *Lindell* v. *Rokes*, 60 id., 249; *Bentley* v. *Lamb*, 112 Penn. St., 480; *Clark* v. *Clark*, 46 Conn., 586; *Reed* v. *Copeland*, 50 id., 472.

*W. H. Williams*, for the appellee.

1. There was no legal or sufficient consideration for the note in question. It must be conceded that whatever consideration there was, if any, accrued during the intervals that Sheldon Clark boarded with Charles, and consisted of the favors which were done for him, as set forth in the finding. If there was no indebtedness or legal obligation on the part of Sheldon in favor of Charles, capable of being

enforced as such, and which the note was intended to pay, clearly there was no consideration for the note. *Cook* v. *Bradley*, 7 Conn., 57; *Colburn* v. *Tolles*, 14 id., 341. It will be observed in this connection that the parties were relatives; that they charged against each other upon book, in the time of it, every thing that was then regarded as the proper subject of a charge. And these accounts were finally adjusted on June 15th, 1887, and there was a balance due Sheldon. The services were voluntarily rendered, without request, and rendered as "favors" and accepted by Sheldon as "favors," and they relied solely upon him "in the exercise of his own judgment" to do as much for them in return as a favor. "They never thought of them as debts or legal obligations." How then could they have maintained an action against him for those services? *Candor's Appeal*, 5 Watts & Serg., 513; *Hartman's Appeal*, 3 Grant's Cases, 271; *Hall* v. *Finch*, 29 Wis., 278. "It must appear by proof of such circumstances connected with their dealing with each other, as fairly warrant the inference that it was the understanding and expectation of the parties on both sides that such services were to be paid for as a debt." 3 Wait's Actions & Defences, 584. A legal obligation for doing the humane acts which might be fairly expected from a boarding master or mistress without extra compensation, is clearly not created by the facts in this case. *Frear* v. *Hardenbergh*, 5 Johns., 272; *Bartholomew* v. *Jackson*, 20 id., 28; *Recknagle* v. *Schmaltz*, 72 Iowa, 63; *Hall* v. *Finch*, *supra*. It seems from the finding that no contract was made as to compensation for the "favors," and no charge was made by the appellant or his wife. Such a contract is necessary to create a legal obligation to make such compensation. Addison on Contracts, 23; *Fitch* v. *Peckham*, 16 Verm., 150; *Andrus* v. *Foster*, 17 id., 560; *Potter* v. *Carpenter*, 76 N. York, 157; *Moyer's Appeal*, 112 Penn. St., 290; *Ackerman* v. *Ackerman*, 24 N. Jer. Eq., 585; *Bonney* v. *Haydock*, 40 id., 513; *Hamor* v. *Moore*, 8 Ohio St., 239. Moral obligations which may furnish a good consideration "include only those cases in which there has been a legal

right which has become devoid of a legal remedy." *Cook* v. *Bradley*, 7 Conn., 57; *North* v. *Forest*, 15 id., 400; *Clement's Appeal from Probate*, 52 id., 464.

2. The note was clearly a testamentary gift. It was not to be of any force until the maker died. The only consideration was gratitude. This method of attempting to dispense with the formalities and legal requisites of a will, is not to be encouraged by our courts. *Raymond* v. *Sellick*, 10 Conn., 480; *Carr* v. *Silloway*, 111 Mass., 24; *Warren* v. *Durfee*, 126 id., 338; *Parish* v. *Stone*, 14 Pick., 198; *Loring* v. *Sumner*, 23 id., 98; *Fink* v. *Cox*, 18 Johns., 145; *Holley* v. *Adams*, 16 Verm., 206; *Smith* v. *Kittridge*, 21 id., 238; *Hamor* v. *Moore*, 8 Ohio St., 239.

ANDREWS, C. J. This is an appeal from the doings of the commissioners on the estate of Sheldon Clark, late of Beacon Falls, deceased, in disallowing a note payable to Charles B. Clark for the sum of seven hundred dollars. The Superior Court made a finding of facts and reserved the question for the advice of this court.

The note in controversy was made on the 29th day of August, 1887. On the 6th day of October following Sheldon Clark made his will and on the 19th day of the same month he died. The execution and delivery of the note was proved, or was admitted, and as it is expressed to be for value received it would *primâ facie* be a valid claim against the estate of its maker and should be paid.

The finding is not very explicit and perhaps not entirely free from doubt, but, taken in connection with the will and with the note itself, it appears that Sheldon Clark, who was unmarried and sick with the consumption, of which disease he died, lived in the family of Charles B. Clark a good part of the time from about January 1st, 1886, to the last of January, 1887—boarded there, and in a sort made it his home there—not continuously but at intervals. There was a price for board which was paid. Charles and his wife, however, rendered services to Sheldon outside the regular contract for board—washed and mended his clothes, attended upon

him when he was sick, cleaned his clothes and the bedding after a hemorrhage, took care of his cattle when he was not able to do so himself and did the chores upon his place etc., etc.—matters not very great in themselves and which seem never to have been the subject of any formal bargain between them. Sheldon appreciated their kindness and favors and on several occasions said to Charles and to the wife of Charles that they should have their pay. In consequence of these statements by Sheldon and in reliance upon them Charles and his wife continued to render these services. Sheldon knew that Charles and his wife expected to be paid, and he fully intended to pay them. No price was ever fixed; it was left for Sheldon to pay such sum as in his judgment should be a full equivalent. Sheldon made the note to pay for these services; there was no other consideration. He made it of his own accord, and there was no suggestion of any fraud, solicitation or undue influence. On the day the note was made Sheldon came to the house of Charles and said to Mr. and Mrs. Clark that he wished them to draw a note for seven hundred dollars, which he desired them to have for what they had done for him. Mrs. Clark said—"Why Sheldon that is too much; that is more than we deserve." Sheldon said—"I want you to have that if I die, but if I get well I want the note back and I will then pay you what is right." The note was then drawn, was examined and approved by Sheldon and was duly signed by him and delivered to Charles, in whose hands it has ever since remained.

The appellees urge two reasons why the note ought not to be allowed against the estate of Sheldon Clark:—that it was, and was intended to be, a testamentary gift; and that it was without consideration. The view we have taken of the case makes any reference to the first reason unnecessary; for if the note was made and delivered upon a sufficient consideration it is valid and binding, and should be paid irrespective of that objection.

We think the note was made on sufficient consideration. Prof. John William Smith in his lectures on the law of

contracts, in answer to the question, "What does the law recognize as a consideration capable of supporting a simple contract?" gives this short practical rule. "Any benefit accruing to him who makes the promise, or any loss, trouble or disadvantage undergone by, or charge imposed upon, him to whom the promise is made, is a sufficient consideration in the eye of the law to sustain the promise." And he adds—"Accordingly in the absence of fraud mere inadequacy of consideration is no ground for avoiding a contract." Smith on Contracts, pages 141, 148. Judge STORRS, in *Clark* v. *Sigourney*, 17 Conn., 517, says:—"Any act done by the promisee at the request of the promisor by which the former sustains any loss, trouble or inconvenience, constitutes a sufficient consideration for a promise, although the latter obtains no advantage therefrom ; and in respect to the extent of such loss, trouble or inconvenience it is immaterial that it is of the most trifling description, provided it be not utterly worthless in fact and in law." See also *Barnum* v. *Barnum*, 8 Conn., 469. "A valuable consideration in the sense of the law may consist either in some right, interest or benefit accruing to one party, or some forbearance, detriment, loss or responsibility given, suffered or undertaken by the other." *Currier* v. *Misa*, L. R., 10 Exch., 162. "If the parties, being in a situation and having the power so to do, have exercised their own independent judgment as to the value of the subject matter, courts of equity should not and will not interfere with such valuation." Pomeroy's Equity, § 926. "In the absence of fraud inadequacy of consideration is not sufficient to avoid a contract even in equity." *Bedel* v. *Loomis*, 11 N. Hamp. 19. Chancellor KENT, in *Osgood* v. *Franklin*, 2 Johns. Ch., 1, says : "There is no case where mere inadequacy of price, independent of other considerations, has been held sufficient to set aside a sale made between parties standing on equal ground and dealing with each other without imposition or oppression." "Inadequacy of consideration is not then of itself a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, sup-

ports the contract." 2 Story's Eq. Jur., § 245. See also *Warner* v. *Daniels*, 1 Wood. & Minot, 110; *Train* v. *Gold*, 5 Pick., 380; *Boothe* v. *Fitzpatrick*, 36 Verm., 681.

The case of *Worth* v. *Case*, 42 N. York, 362, is a case very similar in many respects to the one now in hand. It was brought against the defendant as the executor of Theron B. Worth, on a note for $10,000. The plaintiff and Theron were sister and brother. The plaintiff resided in Corning, not keeping house but living in a furnished room. Theron lived in Southold. He visited the plaintiff at her residence several times. At a visit in January, 1864, he was very ill there. She gave up her room and bed to him, and he spent his entire time in them. She nursed him, bathed him, and rubbed his limbs every morning during his sickness. She also brought his meals to him from the hotel and rendered other attention to him while he was sick. He paid the bill at the hotel but paid her nothing for her service. Several times during his stay he spoke to her about paying her, and said he would pay her well. On the day he left her house, January 30, 1864, he handed her a sealed envelope indorsed : " Mary C. Worth. This is not to be unsealed while I live and to be returned to me at any time I may wish it. T. B. Worth." The plaintiff was not informed and did not know what the envelope contained, until she opened it after her brother's death in 1867, and found in it the note on which the suit was brought. Theron left a will by which he gave to the plaintiff the sum of $1,000. The plaintiff had a verdict for the amount of the note ; in sustaining which the Court of Appeals said :—" The note was given for services rendered and if the note speaks truly he then considered those attentions worth $10,000. He chose for these services to execute the note. We have no pecuniary standard by which we can weigh or measure their value to him. He estimated them then and continued to do so at $10,000. And those who stand in his shoes have no right to repudiate the contract which he made." *Dean* v. *Carruth*, 108 Mass., 242, is another case of like kind.

The case of *Wolford* v. *Powers*, 85 Ind., 294, was brought

on a promissory note executed in consideration of a father's naming a child after the promisor, and in pursuance of the promisor's agreement that if the child were so named he would provide for its education and support. It was held that this was a valid consideration. In delivering the opinion the court said :—" When, a party contracts for the performance of an act which will afford him pleasure, gratify his ambition, please his fancy, or express his appreciation of a service another has done him, his estimate of value should be left undisturbed unless there is evidence of fraud. There is in such a case absolutely no rule by which the courts can be guided, if once they depart from the value fixed by the promisor. If they attempt to fix some standard it must necessarily be an arbitrary one and ascertained only by mere conjecture. If, in the class of cases mentioned, there is any legal consideration for a promise, it must be sufficient for the one made ; for, if this is not so, then the result is that the court substitutes its own judgment for that of the promisor and in doing this makes a new contract. When the purpose of the party is to secure a pecuniary or property benefit there is much more ground for judicial interference than in a case like this, where the controlling purpose is not gain but the gratification of a desire or fancy. Even in the former class of cases, courts never do interfere upon the sole ground of inadequacy of consideration, and certainly should not in the class to which the one at bar belongs. No person in the world, other than the promisor, can estimate the value of an act which arouses his gratitude, gratifies his ambition, or pleases his fancy. If there be any consideration at all it must be allotted the value the parties have placed upon it, or a conjectural estimate made arbitrarily and without the semblance of a guide must be substituted by the courts."

*Earl* v. *Peck*, 64 N. York, 596, was a case brought on a note for $10,000 executed by the defendant's testator. The plaintiff had been in the service of the deceased for some six or seven years as his housekeeper and he was indebted to her for her services. The note was made only about two

hours before his death. No contract had been made as to the rate of compensation for the services but the deceased had said he would pay her well, and the evidence tended to show that the amount of compensation was to be left to him. The court said:—" Mere inadequacy of consideration, except as a circumstance bearing upon the question of fraud, is not a defence to a note. It is not necessary that the consideration of a note shall be equal in pecuniary value to the obligation incurred." See also *Cowee* v. *Cornell*, 75 N. York, 91.

The services rendered by Charles Clark and his wife to Sheldon Clark and for which this note is the promise to pay, if they should be drawn out on a book in the form of an account, with times and dates, and the thing done, and prices, might not amount to seven hundred dollars. But to Sheldon Clark, alone in the world, unmarried, without family or near kindred to make a home for him, sick of a wasting disease, who can measure their value so well as he? He put his own estimate upon them, deliberately and without "speck of imposition." If he chose to pay for the services rendered a much larger sum than they were apparently worth, he had the right to do so. The note was not a gratuity or a testamentary gift. There is no standard whereby courts can limit the measure of value in such a case; and the note is not wanting even partially in consideration because the value of the consideration is less than the obligation.

The Superior Court is advised to render judgment for the appellant to recover of the estate of Sheldon Clark the amount of the note.

In this opinion the other judges concurred.