F. T. TILTON, Respondent, v. THE STERLING COAL AND COKE COMPANY, a Corporation, Appellant.

No. 1556.   (77 Pac. 758.)

1. **Contracts: Option: Construction.**
   Where a contract provided that the first party agreed to give the second party an option to purchase at the expiration of a lease, and in subsequent correspondence the parties considered and treated the contract as granting an option to purchase at the expiration of the lease, it would be so construed by the courts, regardless of what the construction would be under a literal interpretation of the terms of the instrument.

2. **Same: Acceptance: Imposition of Conditions: Effect.**
   An acceptance of an option on conditions not contained in the contract between the parties, and requiring the one giving the option to do more than called for by a contract, amounts to a practical rejection thereof.

3. **Same: Consideration: Time of Acceptance.**
   Where an option is given to a lessee to purchase the leased premises, the lease is a sufficient consideration to support the option, and the lessor cannot withdraw it before the time given in which to accept it has expired; but when the time for its acceptance is specified, the option, as a general rule, unless it is accepted at that time, terminates, if no further time be granted.

4. **Same.**
   While an option to purchase, if based upon a sufficient consideration, binds the party granting it, it is not a contract of purchase until the option is accepted and performed, or tender or performance by the holder is made in proper time; but it is simply a contract granting to the holder of the option the privilege of purchasing, and binds the party by whom it is given to sell and convey the property involved,

upon the acceptance of the option in accordance with the terms, and the compliance on the part of the acceptor with its requirements.

5. **Same: Computation of Time: Fractions of Days.**
   In the computation of time, fractions of days are not reckoned; and, when an act is required by a contract to be done within a specified period from or after a particular day, the general rule is to exclude the day thus designated, and to include the last day of the specified period.

6. **Same.**
   Where a lease granting an option to purchase at its expiration terminated on the 1st day of October, the lessee could accept the option at any time during that day, but had no, right to do so on any day thereafter.

7. **Same: Breach: Damages.**
   Where, after the lease of water to plaintiff by defendant, a third person was decreed to be the owner of part of the leased water, so that plaintiff was deprived of such part, plaintiff was entitled to damages for the loss.

(Decided July 22, 1904.)

Appeal from the Seventh District Court, Sanpete County.—*Hon. Jacob Johnson,*. Judge.

Action for the specific performance of a contract and for damages for an alleged breach of the same by the defendant. From a judgment in favor of the plaintiff, the defendant appealed.

AFFIRMED IN PART; REVERSED IN PART.

*Messrs. Dey & Stevens* for appellant.

*S. R. Thurman, Esq.,* and *Messrs. Hurd & Wedgwood* for respondent.

BASKIN, C. J.—This is an action for the specific performance of a contract, and for the recovery of damages for an alleged breach of the same by the ap-

pellant. The contract contained the following stipulations, viz.:

"In consideration of the sum of one hundred and seventy-five dollars ($175.00) per annum, payable annually in advance on the first day of October of each year, the party of the first part [appellant] hereby agrees to lease to the said party of the second part [respondent] for a term of five (5) years from the first day of October, 1898, the water flowing from the tunnel of said company at its coal mine at Morrison, Sanpete county, Utah, and to grant to said party of the second part a right-of-way over its land, for a ditch of sufficient capacity to carry the water from said tunnel, subject to said first party's approval of the location of said ditch.

"The said party of the first part further agrees to give to said party of the second part an option to purchase, at the expiration of this lease, the above-described water for the sum of three thousand dollars ($3,000).

"The said party of the second part agrees to make the payments as above stated, and to be responsible for any damages that may accrue from an overflow or breaking of said ditch, or otherwise, and to keep said ditch in good repair."

At the trial it was decreed "(1) that the contract made and entered into by and between the plaintiff and the defendant on the seventeenth day of November, 1898, be specifically performed as hereinafter set forth; (2) that plaintiff have and recover from defendant the sum of eight hundred dollars damages, and his costs in this action, taxed at —— dollars; (3) that plaintiff have credit upon the purchase-price of the water mentioned in said contract, to-wit, upon the said sum of three thousand dollars, for the said sum of eight hundred dollars damages, and the further sum of one thousand dollars, the pro rata value of the two second feet of said water heretofore decreed by this court to be owned by corporations not parties to this action, and

which the defendant is therefore unable to convey to the plaintiff in pursuance of said agreement; (4) that within five days after the signing of this decree the said plaintiff shall pay to the clerk of this court for the use of defendant the sum of twelve hundred dollars, and, within five days after service upon it of a copy of this decree, said defendant shall execute and deliver to the clerk of this court, for the plaintiff, a deed in writing conveying to said plaintiff the water flowing from said tunnel, save and excepting said two second feet thereof." It was further decreed that the appellant, its successors and assigns, and all persons claiming under it since November 17, 1898, the date of the lease, be enjoined from asserting title to the water mentioned in the decree, and from interfering with the respondent in the free use thereof.

It is contended on the part of the appellant that, by the second paragraph of the stipulations, an option, only, to purchase the water at the expiration of the lease, was granted to the respondent. On the other hand, it is contended on behalf of the respondent that, taking the stipulations all together, they constitute a contract of absolute purchase of the water at the expiration of the lease, and that upon the tender by the respondent of the purchase price he became entitled to a specific performance of the contract. The language of that paragraph is peculiar. By the literal terms of the contract, no option to purchase was given to the respondent. The appellant only agreed to give to the respondent an option to purchase at the termination of the lease. This the appellant failed to do. Whether for that breach the respondent, under a literal interpretation, could maintain an action either for damages or specific performance, is a question which we are relieved from deciding, because it appears from the letters of the parties hereinafter set out that they considered and treated the contract as granting an option to purchase at the expiration of the lease. This being so, we are of the opinion that the construction given to the

contract by the parties should prevail, and that we should give to it the force which the letters of the parties show they intended.

Considering then, as we do, the contract as one which granted an option to purchase, and not, as claimed by respondent, a contract of absolute purchase, we come to the consideration of appellant's contention that the facts shown by the evidence are not sufficient to sustain the decree for specific performance.

It is contended by appellant's counsel that the respondent did not, as found by the trial court, accept the option prior to the expiration of the lease. On the subject of this finding, the following letters of the president of the appellant and of the respondent were introduced, to-wit:

"Salt Lake City, Utah, August 2, 1901.
"F. T. Tilton, Esq., Richfield.

"Dear Sir: I see the judge has given two second feet of our water to the Gunnison water thieves, and I do not feel like going to the expense of an appeal or a new trial. I think it is now time for you to decide whether you will take that water or not. I feel like punishing those men all I can at any rate, and if you will throw up your contract, I think I can do it so they will lose more in the end than they have gained. If you are in the city soon, call and see me, or write and let me know fully in reference to this matter at once.

"Yours truly,
"THEODORE BRUBACK, President."

"Richfield, Utah, August 5, 1901.
"Theodore Bruback, President Sterling Coal & Coke Company, Salt Lake City, Utah:

"Dear Sir: Replying to your letter of the 2nd inst. in the matter of the suit with the Gunnison Irrigation Company, will say that we can, under no consideration, surrender our contract for the purchase of the water from your company. If your company will

pay up the costs of this lawsuit and make the proper allowance to us on our contract of purchase for the loss of this two second feet which the court has decided did not belong to your company, and thereby place us in the same position that we were before the suit was instituted, we will take up, at any time, our option to purchase, providing your company can furnish a good title to the same.

"Yours truly,

"TILTON & WEYMOUTH, per F. T. TILTON."

"Salt Lake City, Utah, February 26, 1902.

"F. T. Tilton, Esq., Axtell, Utah.

"Dear Sir: I regret to be compelled to state that owing to the inability of the Sterling Coal & Coke Company to pay the interest on their bonded indebtedness, they have been notified that foreclosure proceedings will be instituted and their property sold for the interest and principal of their bonded indebtedness, amounting now to considerable over $100,000.00. This company, therefore, desires to notify you that after this season they will be unable to furnish you with the water now leased by you, and, of course, as a consequence, the option heretofore given, as it will then become the property of the bondholders. You will, therefore, be compelled to make some other arrangement for water than the one you now have.

"Yours very truly,

"THEODORE BRUBACK, President."

"Provo, Utah, March 12, 1902.

"Mr. Theodore Bruback, Salt Lake City.

"Dear Sir: Yours of the 2-26 inst. at hand. In answer will say if I don't have the use of the mine water mentioned, I will thoroughly understand the reason why.

"Yours very truly,

"F. T. TILTON."

No other evidence on the subject was offered.

These letters, taken together, show that, in con-

templation of law, the option granted in the lease was not accepted by the respondent, because he required, as a condition of acceptance, the appellant to do more than called for by the stipulations of the lease. A conditional acceptance of an option amounts to a practical rejection of it. In 1 Parsons on Contracts (8 Ed.), p. 477, the rule is thus stated: "The respondent is at liberty to accept wholly or to reject wholly; but one of these things he must do, for if he answers, not rejecting, but proposing to accept under some modifications, this is a rejection of the offer." 1 Warvelle, Vendors (2 Ed.), section 127; 21 Am. and Eng. Ency. Law (2 Ed.), 930; Gigger v. Nesbitt, 122 Mo. 675; 27 S. W. 385, 43 Am. St. 596; Minneapolis & St. L. Ry. Co. v. Columbus R. Mill Co., 119 U. S. 149, 7 Sup. Ct. 168, 30 L. Ed. 376, and cases there cited.

2. The lease terminated on the first of October, 1903, and on the ninth of that month respondent tendered for the first time to the appellant $3,000—the price of the water mentioned in the stipulations of the lease giving the option. It does not appear that the respondent, either on the day on which the lease expired, or afterwards, until the tender of the $3,000, made any formal acceptance of the option, or did any act from which the appellant could infer that it was his intention to accept the option, and on his part perform its conditions. Appellant's counsel contend, in substance, that it was not bound either by the tender made, or the acceptance of the option implied from the tender, as both occurred several days after the expiration of the lease.

When an option is given to a lessee to purchase the leased premises, the lease is a sufficient consideration to support the option, and the lessor cannot withdraw it before the time given in which to accept it has expired; but when the time for its acceptance, as in the case at bar, is specified, the option, as a general rule, unless it is accepted at that time, terminates, if no further time be granted. While an option to purchase, if based upon a sufficient consideration,

binds the party granting it, it is not a contract of purchase, but simply a contract granting to the holder of the option the privilege of purchasing, and binds the party by whom it is given to sell and convey the property involved, upon the acceptance of the option in accordance with the terms, and the compliance on the part of the acceptor with its requirements. There is no contract of purchase, or any obligation to sell and convey, until the option is accepted and performed, or tender of performance by the holder is made in proper time. Until then there is no contract between the parties which can be specifically enforced.

Respondent's counsel contend that he was not required to accept the option or tender performance on his part at the termination of the lease, but had the right to do so within a reasonable time thereafter, because, as the lease terminated the last moment of the first day of October, the option contract "must be construed either to require the election and payment to be made at the very moment of its expiration, or else it must be construed to give the respondent a reasonable time thereafter to make his election and payment, and demand a conveyance of the water, and that the parties must either be presumed to have intended that the matter should have been closed at midnight, October 1, and the contract to have fixed that time, or else it must be said that they fixed no precise time whatever; and in that case, unquestionably, the law is that a reasonable time thereafter was intended by the parties, and that the contract should be so construed." In support of that view, our special attention has been directed to the case of Rogers v. Burr (Ga.), 25 S. E. 339. In that case the contract contained a provision giving to the subscriber of stock the right, at the expiration of three years from a time stated, to elect whether he would keep the stock, or turn it over to the plaintiffs, and require them to pay him therefor its par value. It was held that the subscriber had no right to make this election before the expiration of the time, and that, as the time for such

election expired at midnight on November 30, a reasonable time thereafter in which to make the election was allowable. For the reasons hereinafter stated, we do not think that that decision is correct. A similar provision in a contract was construed in the case of Magoffin v. Holt, 62 Ky. 95, and in the opinion it is said that "at the expiration of three years means, and was intended to mean, the day on which the period of three years expired. The meaning is as clear, we think, as it would be in the case of an ordinary promissory note for the payment of a sum of money at the expiration of three years from date." A note payable one year from date becomes due in the following year on the same day of the month on which it was dated, and, if it is entitled to days of grace, these should be added to the time which the note has to run. A note dated on the tenth of February, payable two months thereafter, becomes due on the tenth of April, or on the thirteenth, if it is entitled to days of grace. 2 Edwards. Bills & Notes, section 707. It is a general rule of law that, in the computation of time, fractions of days are not reckoned; and when an act is required, by a contract, to be done within a specified period from or after a particular day, the general rule is to exclude the day thus designated, and to include the last day of the specified period. 1 Beach on Contracts, sections 630, 631. In the case of Wiggin v. Peters et al., 1 Metc. (Mass.) 127, it is held that the effect of the expressions "at the expiration of ninety days" and "within ninety days" is the same. In that case one of the conditions of a bond for prison limits given on behalf of a debtor was that he, at the expiration of ninety days from the date of his commitment, should surrender himself, etc. He was committed on the first of April, and surrendered himself on the first of July. In the opinion, written by Mr. Chief Justice Shaw, it is said: "The words in the bond are 'at the expiration of ninety days from the day of his commitment.' The words in the statute are a little different—if he shall not be discharged within ninety

days from the day of his commitment, he will surren-der,' etc. But the effect is the same. 'Ninety days' is a term of time excluding the day of the commitment, and the bond is not forfeited if he obtains his discharge at any time within that term. The case of his not ob-taining his discharge cannot happen until the whole of that time has expired, and therefore there can be no breach of this condition till the whole of that time has expired. In the case before us, excluding 'the day of the commitment,' the term of ninety days expired on the last moment of the last day of June; and as, in gen-eral, the law does not recognize any division of time less than a day, a surrender on the first of July was a surrender at the expiration of the last day of June, and there was a surrender within the time limited by law, and by the condition of the bond, and saved the for-feiture.'' Under section 2520 of the political code of California, the Governor was authorized to appoint three harbor commissioners, and at the expiration of their term to appoint their successors. On the last day of the term of one of the commissioners appointed by him, he appointed his successor. It was contended (Peo-ple v. Blanding, 63 Cal. 333) that this appointment was invalid, because the Governor was not authorized to make it on the day the incumbent's term expired, but the objection was not sustained; the court holding that the word "at," as used in section 2520 of the po-litical code, is indefinite in its meaning, and may mean the exact moment of time, or near it. As the law rejects fractions of a day, when an act is required by a con-tract to be performed on a specified day, its performance is not referable to any particular portion of that day, but may be performed at any period within its com-pass. In the case at bar the lease expired on the first day of October, and before the beginning of the follow-ing day; and as the law does not, in general, recog-nize any division of time less than a day, we think that the proper construction of the lease is that the respondent was thereby granted the right to accept the

option at any time during the day on which the lease terminated, but had no right to do so on any day thereafter.

It is also contended by the respondent that he had the right, without making a tender of the $3,000 to bring his action for specific performance within a reasonable time after the termination of the lease, because the appellant by its letter of February 26, 1902, before quoted, notified the respondent that it would not perform the conditions, on its part, of the option, and that said notice was not subsequently withdrawn. In support of this contention numerous cases are cited which hold that when one of the parties to a contract refuses to perform, or notifies the other party of his determination not to perform, his part of its obligations, a demand for performance, or a tender or offer to perform by the other party, unless the previous notice has been withdrawn, is unnecessary, and not required before commencing suit. This principle is not applicable to the case at bar, because, as before stated, until the acceptance of an option in accordance with its terms, no contract of purchase exists, and the party giving the option is under no obligation to convey the property mentioned therein.

It appears from the record that the irrigation companies of the towns of Gunnison and Sterling, in an action against the appellant, were decreed to be the owners and entitled to the use of the two second feet of water leased to the respondent, and that after the rendition of said decree the respondent was deprived of two second feet of water leased to him. For this loss he was awarded $800 as damages. It is ordered that that portion of the decree awarding damages be affirmed, and that portion requiring a conveyance of the water, and enjoining the appellant, its successors and assigns, and all persons claiming under it, be, and is hereby, reversed and held for naught, and that each party pay their own costs of this appeal.

BARTCH and McCARTY, JJ., concur.