ANNIE TILBERT vs. EAGLE LOCK COMPANY.

MALTBIE, C. J., HAINES, HINMAN, BANKS AND AVERY, JS.

Argued December 8th, 1932—decided March 14th, 1933.

*Epaphroditus Peck,* for the defendant.

*S. Russell Mink* and *Frederick W. Beach,* for the plaintiff.

HINMAN, J. The crucial question reserved is whether the demurrer to the amended complaint should be sustained, it being stipulated that if the facts alleged entitle the plaintiff to recover, judgment shall be rendered accordingly. The complaint as amended alleged, in substance, that the plaintiff's husband, Kasimierz Tilbert, entered the employ of the defendant corporation prior to January 1st, 1922, and continued therein until his death on August 28th, 1931. On or about June 29th, 1923, the defendant cancelled the group insurance which covered the plaintiff's intestate and issued a so-called "Certificate of Benefit" to him, a copy of which and of a letter attached thereto are annexed to the complaint as Schedules A and B. It is alleged that "in accordance with the terms of said certificate the plaintiff's intestate remained in the employ of the [defendant] more than five years and at the time of his death was employed by said defendant and was not notified of any attempted cancellation of said certificate;" by the terms of the cer-

tificate the plaintiff as beneficiary is entitled to $1000, with interest; the plaintiff notified the defendant of the death of her husband and demanded payment, which the defendant refused.

It is further alleged that on or before August 22d, 1931, the officers of the defendant corporation decided to withdraw the certificates of benefit and on August 24th the treasurer caused notices to be printed, dated August 28th, 1931, stating, "Effective immediately, all Certificates of Benefit are hereby cancelled and the Benefit Plan discontinued." Notice of a reduction in wages was also included. The treasurer inserted in each printed notice the number of a particular employee, and these were put in the pay envelopes given by the paymaster to the employees on August 28th, 1931, which was the regular pay day at the defendant's factory. Among said notices was one bearing the factory number of Tilbert and the amount of the hourly pay which he was thereafter to receive. The plaintiff's intestate had been ill for about four weeks and died about two o'clock in the morning of August 28th. Schedule A above mentioned reads as follows:

"CERTIFICATE OF BENEFIT

"Certificate No. 970
From
EAGLE LOCK CO.
Terryville, Conn.

"Accruing to Kasimierz Tilbert (Hereinafter called the Employee) the sum of Seven Hundred (700) Dollars,

"Payable to Annie Tilbert, wife as Beneficiary so named by above employee should death of said employee occur while in the employ of said Eagle Lock Co.

"The schedule below indicates the rate of increase of this benefit as determined by continuous service.

[Schedule of increases yearly, up to $1000 for term of service of five years and over.]

"This certificate automatically is made void when the holder ceases to be an employee. [Provision for payment of full benefit then effective if any employee holding certificate shall before attaining the age of sixty, become wholly and permanently disabled by bodily injuries or disease.]

"Eagle Lock Co.

"Dated June 29th, 1923.        O. B. Hough, Treasurer."

Schedule B, which was printed on the same sheet as Schedule A, reads in part as follows:

"To Our Employees:

"The success of this Company depends in a large degree on the efficiency and loyalty of its Employees and, of course, just as truly does the prosperity of the community and our Employees and their families depend upon the success of the Company.

"Desiring to show our appreciation of the continuing service and the efficiency and loyalty of the Employees, in a substantial manner which will aid each Employee to provide for his dependents in the event of death or permanent total disability, we offer the following plan of benefits, grading the amounts according to term of continuous serivce."

An explanation of the plan and its operation is then given, followed by:

"This benefit plan being voluntary on the part of Eagle Lock Co., it is understood that it constitutes no contract with any Employee or any beneficiary, and confers no legal rights on him or them. It in no way interferes with his freedom to leave our employ whenever he pleases, nor on the other hand, does it take away our right as Employer to dismiss any Employee.

"We fully expect and hope that this benefit plan as outlined above will continue indefinitely and will be

appreciated by the Employees to the extent that we feel justified in continuing the plan indefinitely. We must, however, and do reserve to ourselves the right to discontinue these benefits at any time without any liability on our part to any employee or any beneficiary, either or both.

"We trust every Employee will appreciate the value of these benefits to those he leaves behind should death occur, as it does often unexpectedly and very often prematurely, and not sacrifice these benefits to his dependents by hastily making a change of employment, thus making void the certificate.

"Respectfully, Eagle Lock Co."

The grounds of demurrer are (1) that the complaint does not set forth any consideration for the certificate; (2) that it appears by Schedule B that there was no such consideration; (3 and 4) that it also expressly appears from Schedule B that there is no contract with any employee or beneficiary and no legal rights are conferred; also (5) that the defendant expressly reserved the right to discontinue the benefits at any time without any liability on its part to any employee or beneficiary; and it appears by the complaint that the defendant exercised that right before the death of Tilbert. The demurrer concludes: "Since such discontinuance was a unilateral act of the [defendant] and not a bilateral contract, the receipt of notice of such discontinuance by Tilbert was not an essential to said discontinuance."

As to the claimed lack of consideration, it appears clearly enough from Schedule B that a prime purpose of the granting of the benefits was to secure the good will, loyalty and efficiency of the defendant's employees and especially, through the progressive premium placed on long-continued service, to minimize labor turn-over and obtain the advantages of experienced

operatives. The attainment of these purposes constituted a benefit or advantage received by the defendant, who must be assumed to have requested it because it desired it and regarded it as beneficial to its interests. Tilbert remained in the employ of the defendant more than seven years after receiving the certificate. By so doing he manifested his acceptance of the promise, forebore his right to terminate the employment and engage elsewhere, and conferred the benefit which the defendant sought. *State ex rel. Marsh* v. *Lum,* 95 Conn. 199, 204, 111 Atl. 190. The essentials of a consideration are satisfied. 1 Williston, Contracts, § 102, pp. 196, 197; *Clark's Appeal,* 57 Conn. 565, 19 Atl. 332; *Cook* v. *Bradley,* 7 Conn. 57, 62.

The declaration in Schedule B, above quoted, that the plan constitutes no contract and confers no legal rights, when read, as it must be, with due regard to the other provisions, may and should be construed as preserving the right of the employer to discharge the employee and of the latter to leave the employment at any time, and the right of the employer to discontinue the benefits without liability for such discontinuance or for benefits for death occurring subsequent thereto. To construe it as meaning, further, that, notwithstanding acceptance by an employee and compliance therewith, no obligation whatever was imposed upon the defendant and that, without exercise of the reserved right of discontinuance or other action terminating the agreement, it might refuse to perform it, would ascribe to the defendant an intention to mislead its employees, to its advantage, by an inducement which was known and intended by it to be entirely nugatory, and which this record does not require us to attribute to it. Surely Schedules A and B constitute more than an offer or promise made with an understood intention that, even

if accepted and acted on, it was not to be legally binding at any time but only expressive of a present intention, and therefore not a contract. *Wellington* v. *Apthorp,* 145 Mass. 69, 74, 13 N. E. 10; 1 Page, Contracts, § 77. It is by no means analogous to the illustrations cited by the defendant—an intention announced by a corporation to open a social center for its workmen, or an announcement by an individual of a purpose to give a Christmas present to a friend. Nor is the situation of the employee comparable with that of a person who voluntarily renders occasional services merely in the expectation of receiving gratuities therefor. *Gibbs* v. *Downs,* 94 Conn. 487, 490, 109 Atl. 170. It amounted to and constituted a promise, unless and until it was withdrawn, to employees who accepted and acted upon it, and the beneficiaries of those who died while it was in effect.

It is clear that the defendant reserved the right to discontinue the benefit system at any time, without the consent of the employees or any notice to them expressly provided for. Its action, as alleged in the complaint, in withdrawing the certificates of benefit was in line with this reservation and authorized by it. The only inference to be drawn from the facts alleged is that, on or before August 22d, 1931, it was decided to do so, the withdrawal to take effect when the next pay envelopes were distributed—which would be on the 28th. The allegations as to the preparations made and the sending of the notice so indicate. The plaintiff's decedent died on that date, but long before the commencement of the working day, and therefore before the notice could be or was intended to be distributed and the withdrawal put into effect. The general rule that the law knows no fractions of a day is not allowed to operate against right and justice, and these fractions will be taken into account when, as

here, from the nature of the case, justice requires that it be done, or when necessary to save a vested right. *Hartwell Lumber Co.* v. *United States*, 128 Fed. 306, 142 Fed. 432; 26 R. C. L. p. 736, and cases cited; 78 Am. St. Rep. 382, note. Also, under the general rule, the entire day upon which a contract expires is open for compliance with it. *Hall-Baker Grain Co.* v. *LeMar*, 125 Mo. App. 139, 101 S. W. 1098; *Tilton* v. *Sterling Coal & Coke Co.*, 28 Utah, 173, 77 Pac. 758; *D. & C. Schwartz, Inc.* v. *De Jong*, 169 N. Y. Sup. 101; 78 Am. St. Rep. 380, note; 2 Williston, Contracts, § 857. As the termination of the agreement was not complete until the end of the day of August 28th, Tilbert's death at any time on that date entitled his beneficiary to the designated benefit.

Our answers to the questions reserved are that the demurrer should be overruled, and that on the facts stated in the amended complaint judgment should be rendered for the plaintiff.

No costs will be taxed in this court.

In this opinion the other judges concurred, except Maltbie, C. J., who dissented.