WILLIAM F. CONNELLY, TAX COMMISSIONER [DENNIS
P. O'CONNOR, TAX COMMISSIONER, SUBSTITUTED
PLAINTIFF] *v.* WATERBURY NATIONAL BANK,
EXECUTOR (ESTATE OF MARTHA S. WADE)

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON AND BALDWIN, JS.

Argued January 4—decided March 7, 1950.

*Louis Weinstein,* inheritance tax attorney, with whom, on the brief, were *William L. Hadden,* attorney general, and *Frederic W. Dauch,* first assistant tax commissioner, for the appellant (plaintiff).

*Walter F. Torrance,* for the appellee (defendant).

BROWN, J.   The tax commissioner appealed from a decree of the Probate Court for the district of Waterbury determining that certain inter vivos transfers of securities were not subject to the Connecticut succession tax; the trial court rendered judgment dismissing the appeal and the plaintiff has appealed to this court. The appeal raises the question whether these transfers were taxable as a gift intended to take effect in enjoyment at or after the death of the transferor, under

General Statutes, Cum. Sup. 1939, § 395e (Rev. 1949, § 2021).

The pertinent part of the statute provides that the transfer by a resident of this state of intangible personal property shall be taxable if made "(c) in contemplation of the death of the transferor [or] (d) by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor. Such a transfer as last mentioned shall include, among other things, a transfer under which the decedent retained for his life, or for any period not ascertainable without reference to his death, or for a period of such duration as to evidence an intention that he should retain for his life (1) the possession or enjoyment of, or the right to the income from the property. . . ." As is conceded by the plaintiff, whether the transfers were made in contemplation of death within subsection (c) was a question of fact, and the conclusion of the trial court that they were not cannot be disturbed. The decisive question, therefore, is whether it was warranted in further concluding that the decedent did not retain for her life the possession or enjoyment of, or the right to the income from, the property transferred, within the provisions of subsection (d). This question involves the interpretation of that subsection and its application to the facts found.

We summarize the material facts. The decedent died a resident of Waterbury, Connecticut, on January 30, 1946, at the age of 91. On or about December 25, 1939, January 6, 1940, and November 29, 1941, either directly or through intermediaries, she transferred to each of her two daughters 1500 shares of Scovill Manufacturing Company stock and 735 shares of General Electric Company stock. The total value of the transfers when made was $135,618. They were gifts for which the decedent received no consideration. Shortly

after the daughters received these gifts, they directed each of the two companies to pay all dividends on the stock to the decedent, who accepted them, and neither of the daughters received any dividends on the stock during the lifetime of the decedent. She continued to receive them uninterruptedly from the dates of transfer to the date of her death. The orders to pay dividends were not revoked by the daughters until after the decedent died. At no time did she direct either company to pay dividends to her on the shares of stock. After the transfers, the stock certificates were at all times registered in the names of the daughters and not in that of the decedent and they had physical custody of the certificates and complete dominion over the stock. Either daughter could at any time have rescinded her order for the payment of dividends to the decedent. The latter never discussed her financial affairs with her daughters, and prior to the transfers neither of them had any understanding or any conversation with her concerning the gift of stock to them or the enjoyment of the dividends by her thereafter. The decedent at no time prior to the transfers did anything or said anything that indicated to either of them that she intended to give them the stock or that she desired to retain or enjoy the income from the shares or any part of it after the transfers. It was not until after the transfers were consummated that the daughters first discussed having their mother continue to enjoy the income and decided that they wished to have her do so until such time as they had need to use it for their own purposes. This was without the knowledge of the decedent. They initiated the idea and she had no part in their plans or discussions.

The crux of the question for determination upon these facts is whether the word "retained" as used in subsection (d) is satisfied by the retention in fact,

without more, by the transferor of the enjoyment of the property transferred, and so applies to the present transaction, or whether it requires that the retention of such enjoyment shall be contemplated and intended by the transferor in making the transfer. The transitive verb "retain" is derived from the Latin *"re"* and *"tenere"* and means "to continue to hold, . . . to keep; not to lose, part with, dismiss, or permit to escape." Webster's New International Dictionary (1st Ed.). Accordingly, "to retain" has been held to mean "to hold or keep that which one already owns, 'not to lose, part with or dismiss it.' . . . It more definitely means to 'keep back' that which one then owns, for he cannot retain that to which he has no right or title. *Cudworth* v. *Bostwick,* 69 N. H. 536." *Featherston* v. *Merrimon,* 148 N. C. 199, 205, 61 S. E. 675; 37 Words & Phrases 510. The concept of continuity of ownership or possession is therefore an essential element in the meaning of the word. No right or title to the dividends remained in the decedent after she had made the transfers. The dividends were in the nature of choses in action and were not choses in possession. The continued payment of the dividends by the corporations to the decedent after ownership of the stock had been transferred to her daughters could not, upon the facts found, constitute a retention of these dividends by her within the strict meaning of "retain" as defined above, and so, entirely aside from the decedent's intent, in no event could constitute a "retention" within the terms of the statute.

In addition to the conclusive meaning of the word "retain" as used in the statute, there are other cogent reasons why it should not be construed as applicable to the situation before us. Under our statutes the tax on property passing at death is a tax upon the right to succeed to it, and the taxation relates back

to something done by or some intention of the deceased with reference to the right to succeed. In this connection the use in subsection (d) of the past tense of the verb in the clause "a transfer under which the decedent retained for his life" the enjoyment of the gift, instead of the present or future tense, is significant. It looks to the past, to something the decedent has done, not to what someone else, as the donee, may chance to do. In fact the whole statute is related directly back to some act of the decedent. While the decedent in this case in fact had the uninterrupted enjoyment of the dividends until her death, this was not accomplished by any act of hers, for by the transfers she completely divested herself of power to act, but by acts of her daughters, who alone could continue the uninterrupted flow of income. To this situation the statute has no application. To hold the contrary would make taxability depend, not upon what the decedent as donor did or failed to do, but upon the conduct of the donees. The result would be too fortuitous to be held to be reasonably within the legislative intent.

Other provisions contained in the statute confirm our conclusion that some act by the decedent as transferor, with the comprehension and intent implicit therein, is essential to render the transaction taxable under the clause in question. Subsection (d) applies to gifts "intended" to take effect at or after death. The particular clause in question says that the subsection shall "include" the situation described in it. To bring the instant case within the terms of the statute, however, would hardly be "including" it within the preceding general provision; it would be extending that provision to something beyond its scope. Again, the concluding words of the clause in question cover situations where the donor has "retained" for his life or "for a period

of such duration as to evidence an intention that he should retain for his life" the enjoyment of the property. Obviously, this word "intention" cannot refer to any other intention than that of the donor. So both of these provisions corroborate our conclusion that some act done by the donor with intent is essential to bring the transaction within the terms of the clause in question.

Production of revenue, not punishment of the transferor, is the purpose of the statute. It is true, therefore, that we must assume that the variations in phraseology in the present act as compared with the former one were intentional and adapted to the changing financial necessities of the state. *Blodgett* v. *Union & New Haven Trust Co.*, 97 Conn. 405, 411, 116 A. 908. They evidence an intent to make the taxing provision of the statute not less but more inclusive. The present second sentence of subsection (d) was substituted for the following, which appeared in § 486c of the 1935 Cumulative Supplement: "A transfer of property in respect to which the transferor reserves to himself a life income or interest shall be construed prima facie to have been intended to take effect in possession or enjoyment at death." So the amendment, made in 1937, not only categorically prescribed that a transfer with retention of the right to income for life should constitute a grant intended to take effect in possession or enjoyment at or after the death of the transferor, instead of being merely prima facie evidence thereof, but also brought additional situations within its scope. Our construction of the clause in question therefore does no violence to the principle recited above. If the legislature had intended the amendment to include a case where enjoyment of income is "retained" in the sense for which the plaintiff contends, it failed to express this intent, as it easily

could have done by employing such words as "shall have received for his life" instead of "retained for his life." It is the intention of the legislature as expressed in the language it used which controls. *State* v. *Faatz,* 83 Conn. 300, 305, 76 A. 295; *Connelly* v. *Bridgeport,* 104 Conn. 238, 249, 132 A. 690; *State ex rel. Ryan* v. *Bailey,* 133 Conn. 40, 45, 48 A. 2d 229. Even if the clause as worded could be held to be clearly ambiguous, the ambiguity would have to be resolved in favor of the taxpayer. *Curtis* v. *Corbin,* 93 Conn. 648, 656, 107 A. 506. As already indicated, however, resort to this principle is not involved in our conclusion that the trial court did not err in dismissing the plaintiff's appeal from the decree of the Probate Court.

While it is unquestioned that the decedent's transfers constituted an unconditional gift of the shares of stock to the two daughters, it is the plaintiff's claim that, since the payment of all dividends to the decedent continued without interruption to the time of her death, there was no effective gift of income but rather an offered gift thereof which the daughters refused to accept. This contention is without merit. Full right and title to the corpus passed to the daughters by the transfer and with it full right to the dividends. It was only by their act of ownership in assigning these to the decedent that her continued enjoyment of them was realized. They accepted the gift of both corpus and income and then proceeded to dispose of the latter as they saw fit.

There is no error.

In this opinion the other judges concurred.