LILLIAN A. DOLAK *v.* JOHN L. SULLIVAN, TAX COMMISSIONER, ET AL.

DALY, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued June 5—decided July 30, 1958

*Herman Levine,* inheritance tax attorney, with whom, on the brief, were *John J. Bracken,* attorney general, and *Frederick W. Dauch,* first assistant tax commissioner, for the appellant (named defendant).

*William K. Cole,* for the appellee (plaintiff).

*Spencer Gross* appeared for the defendant Hartford National Bank and Trust Company, Executor, but did not argue the cause.

KING, J. The fundamental question briefed and argued in this appeal is whether the Probate Court was correct in holding subject to our succession tax, as a transfer intended to take effect in possession or enjoyment at or after death, certain pension benefits which became payable to the plaintiff upon and after the death of the decedent, Michael C. Dolak, her husband, under a retirement plan of The Connecticut Mutual Life Insurance Company, hereinafter referred to as the company.

The defendant tax commissioner, hereinafter called the defendant, filed an answer admitting all of the allegations of the reasons of appeal except the final paragraph, which in effect alleged that the judgment of the Probate Court was erroneous. The retirement plan was incorporated in the reasons of appeal as an exhibit. It was of the noncontributory type, since the decedent made no money payments

either into the plan or for any benefits provided under it. The plan was unfunded, there was no trustee, and there was no provision requiring the company to have on hand, if and when needed, any particular reserve or assets to enable it to carry out the terms of the plan. Coverage under the plan was automatic for employees of the company. The decedent, at the time of his death, was actively employed as a vice president of the company. At no time, either before or after electing the optional death benefit hereinafter referred to, had he become entitled personally to receive any retirement allowance or other money benefit under the plan. Benefit payments under the plan were not assignable. Such money benefits as a covered employee would personally receive under the plan consisted of retirement payments and came only upon his retirement while actively employed by the company. If for any cause other than death employment ceased prior to retirement, an employee was automatically withdrawn from the plan regardless of length of service, and as to him the plan would become wholly inoperative. If the decedent had, while actively employed, left the company to accept other employment or for any reason other than retirement, he would have rendered the plan inoperative as to him, and thereafter neither he nor the plaintiff would ever have received any benefits under it.

In case of death occurring prior to retirement and during active employment, which was the situation here, the plan provided for a single sum death benefit, which in this particular case would have amounted to $34,500.[1] Had the decedent not elected

---

[1] This sum was payable in 12 equal monthly instalments unless the employee elected to have it payable (a) in a lump sum or (b) in monthly instalments of more than 12, but not to exceed 120.

otherwise, the plaintiff, upon his death while he was actively employed, would have received, subject to the company's reserved right of discontinuance or modification hereinafter more particularly set forth, twelve monthly instalments aggregating that amount. But the plan also provided for an alternative death benefit, which the decedent on February 18, 1955, elected to take, in the form of an annuity, payable monthly, for the life of the surviving spouse. Pursuant to that arrangement, the company has made payments to the plaintiff monthly since the decedent's death on July 6, 1955. Thus the effect of the election by the decedent was to change the amount which the plaintiff would otherwise have received, upon his death while he was actively employed, from twelve monthly payments aggregating $34,500 to an annuity providing, for her life, monthly payments the commuted value of which was $37,037.18. The company reserved "the right to discontinue or modify the plan at its pleasure except that retirement allowances of employees who have already retired shall not be reduced."

The controlling law was that in effect at the decedent's death. *Hackett* v. *Bankers Trust Co.*, 122 Conn. 107, 128, 187 A. 653. This is found in § 1137d of the 1955 Cumulative Supplement and § 2021 of the General Statutes. These sections impose a tax upon transfers of property made "by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor." See *Borchard* v. *Connelly*, 140 Conn. 491, 493, 101 A.2d 497. Section 2021 (d) provides that such a transfer shall include one "under which the decedent retained for his life . . . (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person

or persons, to designate the person or persons who shall possess or enjoy the property or the income therefrom." Id., 494. "It is the right of possession or enjoyment of property rather than the vesting in interest which is the basis of the tax levy. *Cochran* v. *McLaughlin,* 129 Conn. 176, 179, 27 A.2d 120." *Miller* v. *Connelly,* 142 Conn. 144, 149, 112 A.2d 202. The tax is on "the shifting of the enjoyment of property—the 'economic benefits' thereof or 'economic interest' therein." *Borchard* v. *Connelly,* supra, 494.

Relying on a statement in *Borchard* v. *Connelly,* supra, 495, that "the succession tax may be assessed only as regards property which at the time of its transfer was owned by the decedent," the Superior Court reversed the decree of the Probate Court and held, in effect, that upon the facts the retirement plan never became an enforceable contract but remained at most a mere expectancy. From this the court concluded that neither at the time of the death of the decedent nor on any prior date had he owned anything, as far as the plan was concerned; that therefore the plaintiff succeeded to nothing which the decedent had owned; and, consequently, that there was nothing subject to tax. The statement relied on by the court is a correct statement of the rule normally applicable, for the reasons given at length in *Connelly* v. *Waterbury National Bank,* 136 Conn. 503, 506, 72 A.2d 645. But it does not mean that an indirect transfer of the type which took place here is not taxable. It is not necessary that the specific property received by the beneficiary shall have been previously owned by the decedent. He may, as was the case here, part with a valuable consideration owned by him in exchange for a contractual obligation of a third party running directly to the transferee.

In *Tilbert* v. *Eagle Lock Co.*, 116 Conn. 357, 165 A. 205, the death of one actively employed terminated the right of his employer to change or discontinue its retirement plan as to him. Here, according to the literal wording of the plan, only retirement while actively employed, which in the case of this decedent never occurred and because of his death while actively employed never can occur, had that effect. Thus a literal construction of the contract would, as claimed by the plaintiff, leave the company free at any time to discontinue or modify the monthly payments which she is receiving. The defendant claims that death while actively employed should be construed as the equivalent of retirement while actively employed and so should in like manner terminate any right of discontinuance or change. For reasons which will hereinafter appear, it is not necessary to pass on this claim as far as the question whether there was any taxable transfer is concerned. In connection with the claim, the dictum in *Bird* v. *Connecticut Power Co.*, 144 Conn. 456, 463, 133 A.2d 894, would be pertinent. See 3 Corbin, Contracts, p. 93, citing *Brown* v. *Slater,* 16 Conn. 192, 195.

At the very least, the retirement plan amounted to a contract between the decedent and the company, the obligations under which were subject to extinguishment, in whole or in part, upon the happening of a condition subsequent in the form of the exercise, by the company, of its reserved power of discontinuance or modification, if and to the extent that such power legally existed. 3 Corbin, Contracts, § 739 p. 872; § 744 p. 886. This much was clearly held in *Tilbert* v. *Eagle Lock Co.*, supra, 363. Admittedly, the company has not as yet exercised any such reserved power. Thus we have a valid contract, which up to and including the present time is in full force

and effect. It was entirely different from no contract at all. See *Zaleski* v. *Clark,* 44 Conn. 218, 223, and *Eric* v. *Walsh,* 135 Conn. 85, 89, 61 A.2d 1, in each of which there was a contract although obligations under it were subject to conditions precedent. Of course the rights under the retirement plan constituted a chose in action and, so, intangible personal property. *Keller* v. *Gaylor,* 40 Conn. 343, 349; *Silberman* v. *Blodgett,* 105 Conn. 192, 214, 134 A. 778; *Eric* v. *Walsh,* supra, 91.

The decedent had acquired, and up until the time of his death was continuously giving consideration for, this contract, such as it was. The consideration was his continued employment, and every day that he worked for the company he gave to it further consideration for the plan. *Tilbert* v. *Eagle Lock Co.,* 116 Conn. 357, 362, 165 A. 205. The consideration given for the contract stemmed solely from the decedent. *State ex rel. Marsh* v. *Lum,* 95 Conn. 199, 204, 111 A. 190. The plaintiff gave no consideration. She had no legal power either to compel the decedent to remain with the company and thereby keep the contract in effect or to control the exercise by him of such option rights as were open to him under the contract. In other words, it was his contract even though she might under certain contingencies benefit under it. The court was in error in deciding that there was no contract and that the decedent owned nothing under it.

There remains the question whether there was any taxable transfer here and, if so, what it was. This depends upon the terms of the contract and the provisions of applicable statutes. 85 C.J.S. 969, § 1158 b. The plaintiff attempts to take advantage of the fact that the company, under the plan, acted in a dual capacity. As an ordinary employer, it provided a

pension plan for its employees. But instead of buying an annuity policy from a company authorized to issue it, as did Yale University in *Borchard* v. *Connelly,* 140 Conn. 491, 493, 101 A.2d 497, it entered into the contract itself as an obligor. Whether there was a taxable transfer must be determined on the basis of the contract. It is of no moment whether the defendant itself issued it or had been able to purchase, and had purchased, a contract of identical provisions in the open market from a company authorized to issue it.

The plaintiff would under no circumstances have received any benefit under the contract but for the concurrence of (1) the decedent's original acquisition of the contract; (2) his continuance in the active employment of the company until his death, thus keeping the contract alive and operative; and (3) his death prior to that of the plaintiff. In addition, of course, in order for the plaintiff to receive the annuity which she is now receiving, as distinguished from the fixed sum benefit of $34,500, there had to be (4) the exercise by the decedent of his option rights under the contract and (5) a failure by him to change the resulting arrangement. While it might perhaps be fairly claimed that conditions (4) and (5) could affect only the difference between what the plaintiff will receive and what she would have received had the decedent failed to exercise the option, no such claim could be made as to conditions (1), (2) and (3), which did not involve the option at all. Without the concurrence of these first three conditions the plaintiff would have received nothing. These brought about the operative taxable transfer. We can therefore confine our attention to them.

It would not have been possible, prior to the decedent's death, to determine whether conditions (2)

and (3) had occurred. Thus the plaintiff's rights, as a contingent third party beneficiary, to possess or enjoy anything under the contract did not become fixed until the decedent's death. Whether the transfer to her should be considered as having been made when the decedent first entered the company's employment and, by commencing work, gave the initial instalment of consideration for the acquisition of the contract, or whether it was made on his last working day, when the final instalment of consideration necessary to keep the contract alive was given, or whether it was made at some intermediate period, could not affect the result. The fact remains that at some period during his active employment by the company the decedent, by a transfer of considerations from himself to the company, acquired contractual obligations running from the company not only to himself but to the plaintiff as a contingent third party beneficiary. These contractual obligations took effect in possession and enjoyment, as far as the plaintiff was concerned, only upon the decedent's death. It follows that the full benefits, such as they are, passing to the plaintiff by the annuity contract are taxable as a transfer or grant of intangible personal property under § 1137d of the 1955 Cumulative Supplement. Those benefits were by the decedent intended to, and in fact did, take effect as to this plaintiff, in possession and enjoyment, at his death, within the meaning of General Statutes § 2021 (d). *Borchard* v. *Connelly*, 140 Conn. 491, 495, 101 A.2d 497. The statute (now Public Act No. 163, § 27) exempting from our succession tax the proceeds of certain life or accident insurance policies has no application to annuity contracts. *Borchard* v. *Connelly*, supra, 496.

The plaintiff further claims that the exercise of

the option by the decedent amounted, at most, to the exercise of a mere power of appointment, and that any property or title which the plaintiff has was as "[a]n appointee under a power of appointment [who] derives his title from the donor [here the company] of the power," under the rule of *Bankers Trust Co.* v. *Variell,* 143 Conn. 524, 528, 123 A.2d 874. The *Variell* case dealt with a power of appointment gratuitously conferred under a will. It has nothing to do with a contractual right, given upon full consideration, to designate who, under certain contingencies, shall receive benefits under an annuity contract. *Borchard* v. *Connelly,* supra. The plaintiff places great reliance on the case of *Supreme Colony* v. *Towne,* 87 Conn. 644, 648, 89 A. 264. The *Towne* case involved rights in a fund, not rights in a contract. Here the decedent had no property rights in any fund because there was no fund. But he did have rights in a contract, and these he exercised to the benefit, upon his death, of the plaintiff. He himself received no personal retirement payments because the condition precedent to his receiving them—retirement while actively employed— never occurred. But this had nothing to do with his rights under the plan, such as they were.

The probate decree appealed from determined that "the commuted value of the pension benefits payable to . . . [the plaintiff] under the . . . Plan . . . is taxable as a transfer to take effect in possession or enjoyment at or after [the decedent's] death," and ordered a supplemental inventory covering that transfer to be filed. The Court of Probate was correct in holding taxable the value of the pension benefits payable to the plaintiff under the plan, such as they were, and in ordering the inclusion of this in a supplemental inventory. Cum. Sup. 1955,

§ 1147d; see *Gold's Appeal,* Kirby 100, 103; *Hartford & N.H.R. Co.* v. *Andrews,* 36 Conn. 213, 215; *Searle* v. *Crampton,* 118 Conn. 42, 46, 170 A. 480; *Lynch* v. *Skelly,* 138 Conn. 376, 378, 85 A.2d 251. To avoid confusion, however, it should be pointed out that · the evaluation of these economic benefits, whether at their commuted value or otherwise, is to be determined in the first instance by appraisers, and the decree of the Probate Court appealed from could not legally evaluate, in advance of appraisal, the benefits transferred to the plaintiff. Cum. Sup. 1955, § 1147d. While we do not pass on the issue of evaluation, since that is not properly before us and requires further proceedings in accordance with law, we do point out, in an endeavor to expedite the determination of this litigation, that on the issue of evaluation at least two questions may arise. The first is whether the power of discontinuance or modification still exists, as the plaintiff claims, because if it does, then the contractual rights she now enjoys are of less value than if the power ceased at or before the decedent's death. If the power still exists, a second question arises as to how much her rights are thereby lessened in value. The answer to this would depend upon how likely it is, in fact, that the company will ever exercise the power, and to what extent the exercise of it would reduce the benefits to be received by the plaintiff. There may be other questions entering into the proper method of evaluation. See 3 Locke & Kohn, Conn. Probate Practice, §§ 62, 63, 43; Cum. Sup. 1955, § 1146d. Of course, after evaluation, if evaluation proves possible, there comes the computation of the tax under § 1150d of the 1955 Cumulative Supplement. Because of the employee relations involved, the company may admit that it has no reason to believe, and does not in

truth believe, that it will ever attempt to discontinue or curtail Mrs. Dolak's payments. If computation of the present value of the plaintiff's benefits proves impossible because of uncertainties growing out of the company's reserved power of discontinuance or modification, then it might be necessary to proceed under § 1146d.

There is error, the judgment is set aside, and the case is remanded with direction to amend the decree of the Court of Probate by deleting therefrom the word "commuted" and to affirm the decree as so amended.

In this opinion the other judges concurred.