PATTERSON, ESTATE OF, IN RE.

Probate Court, Cuyahoga County.

No. 568884. Decided July 3, 1962.

Messrs. *Calfee, Fogg, McChord & Halter,* by *Mr. John L. Naylor, Jr.*

*Mr. Mark McElroy,* attorney general, by *Mr. Arthur P. Lambros,* assistant attorney general.

### ISSUE

DECATUR, Referee. Whether the proceeds of an annuity

272

policy purchased by an employer under a retirement income plan and paid to a designated beneficiary upon the death of an employee following his retirement are taxable under Section 5731.02, Revised Code, of the Ohio Inheritance Tax Law.

FACTS

The decedent, Robert G. Patterson, was an employee of the Lamson and Sessions Company from March 11, 1935, until his death on February 6, 1959. In 1943 the decedent became a participant in the Company's "Salaried Employees' Retirement Income Plan." Under terms of the plan a trustee was to purchase life insurance policies with funds furnished by the Company for those participants who were insurable. For those participants who were not insurable the trustee was to purchase retirement income policies. The decedent was not insurable. As a result, the trustee purchased nine annuity contracts on behalf of the decedent during the years the decedent was a participant under the plan.

Under the provisions of the Salaried Employees' Retirement Income Plan, Article III, paragraph 2, the trustee was to be the sole owner of policies purchased subject to the terms of the plan until the participant retired and then the policies were to be forwarded to the retiring employee. The employee at that point would cease to be a party to the plan; and would be free to deal directly with the company which issued the policies according to the tenor of his contract. However, after March 11, 1950, the decedent had a vested right to have the policies assigned and delivered to him if his employment with the Company should terminate prior to retirement.

In June, 1956, prior to the decedent's normal retirement date which was August 15, 1956, the Company requested the decedent to advise it as to the beneficiaries to be designated in the Normal Retirement Settlement Form. The decedent designated his wife, Florence L. Patterson, as the first contingent beneficiary, and his sons, Robert and William, as the second contingent beneficiaries. Under the plan the decedent was entitled to receive monthly payments for life with payments for ten years guaranteed. On retirement, the decedent received the nine annuity policies formerly owned by the trustee under the retirement income plan.

After the decedent's death, his wife, Florence L. Patterson,

took the commuted value of the nine policies in cash amounting to $37,057.78.

## Taxing Statute

Section 5731.02, Revised Code, provides: "A tax is hereby levied upon the succession to any property * * * to or for the use of a person * * * (c) When the succession is to property from a decedent * * * (2) Intended to take effect in possession or enjoyment at or after such death."

Relying on the above statute the Ohio Department of Taxation seeks to tax the commuted value of the nine annuity policies as a taxable succession under the Ohio Inheritance Tax Law. In response, the estate admits that Mrs. Patterson "succeeded" to "property," and that the timing was "at or after" her husband's death but the estate contends there was no "succession * * * to property from a resident decedent * * *."

## Analysis

To the writer's knowledge the precise fact situation in this case has not been dealt with in prior Ohio cases. However, this area is covered by a helpful annotation in 73 A. L. R. (2d), 182, which discusses decisions from Ohio and other jurisdictions dealing with the applicability of state inheritance tax statutes to retirement income benefits. In addition, a note discussing the Minnesota Inheritance Tax found in 43 Minn. L. Rev., 444, 474 (1959), presents a good explanation of basic principles in this area.

## "Ownership" and "Succession" Theories

It is stated in 43 Minn. L. Rev., 444, that courts applying inheritance tax statutes have tended either to emphasize the decedent's possession of interests in the property transferred on the one hand, or the transferee's receipt of the property on the other. In the former type of case, which is referred to herein as an "ownership theory" case, property passing to a transferee at the decedent's death will escape tax if the decedent had no interest in it at his death. In the latter type of case, which is herein called a "succession theory" case, property may be subject to tax if received by a transferee at the decedent's death, even though the decedent then had no interest in or control over the property.

The states are about evenly divided in their acceptance

of these two theories. However, Ohio, Illinois, Pennsylvania and Delaware are clearly ownership states. See *In re Heine's Estate*, 100 N. E. (2d), 545 (Ohio P. Ct., 1950); *In re Estate of Hazelton*, 148 Ohio St., 127, 73 N. E. (2d), 799 (1947), while Michigan, Washington and Wisconsin seem inclined toward the ownership theory; New York has decisions both ways. As mentioned above, in the "ownership theory" states there is no inheritance tax if the decedent retained no interests in the subject matter of the transfer at death.

The central issue in this present case is, therefore, to determine what, if any, interest the decedent had in the property which was transferred to the beneficiary. This issue is the one raised by the estate when it is contended that there was no "succession * * * to property from a resident decedent."

In the briefs filed by the state and the estate, several cases dealing with the taxability of retirement income proceeds under state inheritance tax statutes have been discussed. A review of these cases along with several cases found by the writer will show what has been held necessary under the "ownership theory" for the taxability of retirement income proceeds.

### The Ohio Case

The leading Ohio case is *In re Daniel's Estate*, 93 Ohio App., 123, 112 N. E. (2d), 56; *Aff'd.* 159 Ohio St., 109, 111 N. E. (2d), 252 (1953). In this case the payments from a company profit sharing and pension trust fund, composed solely of contributions by the company, were held to be a taxable succession to the designated beneficiary. However, the *Daniel's case* is distinguishable from the present case on several points. There the company specifically relinquished all rights of ownership to the contributions it made and segregated the funds of each employee; and also in the *Daniel's case* the employee involved died before retirement.

Because of the fact that the employee in the *Daniel's case* died before retirement, the estate contends that the case is not in point and not direct, controlling authority here. However, in the opinion of the writer it is not a critical factor whether the employee's death took place before or after retirement. This distinction is not raised in cases from other jurisdictions dealing with the taxability of retirement income benefits received by a designated beneficiary. The important question is

*whether the decedent had an interest in the property transferred to the decedent.* This question is answered by the court's statement "The trust fund belongs to the employees, each being the owner of his allotted portion, although the actual possession and control thereof is postponed pending severance or retirement of the employee, or, as in this instance, the death of the employee" 109 Ohio St., 113.

The taxability of the cash surrender value of an unconsummated annuity contract paid to a designated beneficiary when the employee died prior to retirement was considered in *In re Estate of Chadwick*, 167 Ohio St., 373, 149 N. E. (2d), 5 (1958), and a tax was imposed under Section 5731.02. However, the decision was made on the issue that the amounts paid under the retirement annuity contracts were not exempt from inheritance taxation as proceeds of life insurance within the meaning of Section 5731.06, Revised Code. Since it is not contended that the proceeds in the present case are from life insurance, the *Chadwick* case is not in point.

THE PENNSYLVANIA CASES

Like Ohio, Pennsylvania is an "ownership theory" state. *Glosser Trust*, 355 Pa., 210, 49 A. (2d), 401 (1946); *Townsend Trust*, 349 Pa., 162, 36 A. (2d), 438 (1944); *Dolan's Estate*, 279 Pa., 582, 124 A. H., 176 (1924). Unlike Ohio, however, it has several cases which concern the problem presented in the present case.

In the case *In re Dorsey's Estate*, 366 Pa., 557, 79 A. (2d), 259 (1951), the property in question was the company's contributions to a pension plan which were apportioned among its employees and a share thereof credited to decedent's account, which he could either withdraw in his lifetime or make payable to a designated beneficiary at his death. The court held that the fund transferred to the beneficiary was the property of decedent, even though the decedent did not exercise his right to withdraw his share of the funds.

In the case *Hoelzel's Estate*, 101 Pittsburgh Leg. J., 77 (1952), the employer of the deceased paid the entire cost of a single premium refund annuity under a group annuity contract, the deceased being the annuitant. Deceased exercised an option providing that if he died before his retirement date the insurance company would pay his widow an annuity for twenty years,

and he had the power to change the beneficiary of such payments. Deceased died before retirement and his widow became entitled to the annuity. The court held that the contract was the property of decedent and that the corporation had made a gift of it to him. Therefore, the annuity was as much his property as if he had purchased it with his own money. It appeared in *Hoelzel's Estate* that the company originally had the right to cancel the contract but this right expired when the employee completed twenty-five years of service, a few years before he died.

In the cases *Enbody Estate*, 85 Pa. D & C, 49 (Orphans Court) and *Burke Estate*, 85 Pa. D & C, 56 (Orphans Court) (1953) the court held that where a pension plan for the benefit of a company's employees created solely by the contributions of the employer, prohibits the employee from withdrawing, borrowing or assigning any interest in the fund and exempts his interest from attachment, so that his sole right of disposition is to name the beneficiary who is to receive the balance of guaranteed payments remaining in the event of his death, payments made after his death are not subject to the Pennsylvania Transfer Inheritance Tax.

The factual situation present in the *Enbody Estate case* is so strikingly similar to the present case that it is important to discuss it in detail and determine just what the factors are that the court relied on to deny taxation.

In the *Enbody case* an employee adopted a pension plan and transferred to a trustee a sum to be held in the past-service fund for the benefit of an employee. Upon retirement of an employee the trustee was directed to pay $33.00 a month for not less than 120 months and thereafter for life, and in the event of her death before receiving 120 payments the trustee was to pay the balance to a person named by the employee as beneficiary, or, in default of a nomination, to her heirs at law. The employer paid all the contributions to the fund and the employee had no power to assign or anticipate his interest in the fund. The employee died after receiving 14 monthly payments, and the trustee paid the balance to the beneficiary designated by decedent before her retirement.

In its decision the court held that the payment was not subject to tax because decedent did not own or control the fund

in question, and did not make any transfer of her property to the beneficiary. The court treated the right to designate a beneficiary as in the nature of a power of appointment, so that the employee acted as an agent of the employer in disposing of the remainder of the payments.

The statute under which the state sought to impose the inheritance tax is the Act of June 20, 1919, P. L., 521, which provides:

"A tax shall be, and is hereby imposed upon the transfer of any property * * * made by a resident * * * by deed * * * or gift * * * intended to take effect in possession or enjoyment at or after such death."

There are several important differences between the pension plan in the *Enbody Estate* and the retirement income plan in the present case.

(1) Under the Lamson and Sessions Company's plan the employee had the vested right to have the policies assigned and delivered to him if his employment with the Company should terminate prior to retirement. There was no such right in the *Enbody Estate* pension plan.

(2) Under the Lamson & Sessions Co.'s plan upon the retirement of the employee the trustee endorsed the policies over to the employee who ceased to be a party to the plan and who became the owner of the policies. In the *Enbody Estate* the retired employee did not own the pension funds which were paid by the Company's trustee.

(3) Under the Lamson & Sessions Co.'s plan, if the employee failed to designate a beneficiary, or if the beneficiaries predeceased the employee, all unpaid proceeds due or to become due, were to be paid to the executor or administrator of the deceased employee. (P. 18 of Plan.) In the *Enbody Estate*, if the employee failed to designate a beneficiary, the unpaid installments were to be paid to the persons and in the proportions provided in the intestate laws of Pennsylvania, and in default of such persons, to the Future Service Fund of the Trust. This last distinction was emphasized by the court. Under the pension plan in the *Enbody Estate* the fund could never become the property of the decedent or become a part of the decedent's estate. Under the Lamson & Sessions Co.'s plan the policies could become and did become the property of the decedent. Be-

cause of the above indicated distinctions, the present problem is not the same as the one presented in the *Enbody Estate*.

In the *Burke Estate*, 85 Pa. D & C, 56 (1953) the court used the reasoning present in the *Enbody Estate* to deny taxation of retirement benefits received by a designated beneficiary when the employee under a company retirement plan, funded entirely by the company, died following retirement. Here again the employee had only the right to designate the beneficiary to receive the balance of the guaranteed payments remaining in the event of his untimely death. Moreover, if no beneficiary was named, or those named died, the pension committee had the power to direct the trustee to pay all remaining undistributed benefits to the "spouse, descendent, adopted child, blood relative, dependent, or the estate of such employee, or of any deceased beneficiary, as Pension Committee shall direct." 85 Pa. D & C, 57 (1953). Therefore, the distinctions between the *Burke Estate* and the present problem are the same as those found in the *Enbody Estate*.

In the case *Cameron Estate*, 15 Pa. D & C 2d, 557 (1958), a corporation entered into a contract with its vice-president and treasurer to pay a deferred compensation of $50,000.00 over a period of ten (10) years beginning upon his retirement, the payments to be made to his widow if he died before the payments were completed. In holding that the sums payable were subject to inheritance tax, the court pointed out that decedent had rights in the contract which he could have assigned during his life. On this point the court differentiated the case from the *Burke* and *Enbody* cases.

CASES FROM OTHER JURISDICTIONS

Other cases in which the employer has paid the entire cost of an annuity for an employee, or has made all the payments to a pension trust, included *Bourchard* v. *Connelly*, 140 Conn., 491, 101 A (2d), 497 (1953) and *Dolak* v. *Sullivan*, 145 Conn., 497, 144 A (2d), 312 (1958). These cases present slightly different problems from the present problem. In each the employee exercised an option whereby his beneficiary received an annuity at his death. The courts held that the retirement benefits were the property of the decedent and the exercise of the option constituted a taxable transfer. It would appear from these holdings that Connecticut is a "succession theory" state.

New York cases cited by the state in their briefs include *In re Harbord's Estate*, 132 N Y S (2d), 647, 111 N. E. (2d), 736 (1954), and *In re Endemann's Estate*, 122 N Y S (2d), 682 (1953).

In the *Harbord case* the decedent was a participant in a pension plan underwritten entirely by his employer. He exercised an option to receive a joint and survivorship annuity instead of an annuity for life. The court held that decedent's exercise of the option constituted a transfer of a part of the property to take effect in possession or enjoyment at his death. The court also said the decedent's rights under the plan were in effect a salary increment and constituted intangible property. This case also appears to have been decided using the "succession theory."

*In re Endemann's Estate* presents the situation where the employee made an election to take benefits for himself and a reduced benefit for his beneficiary instead of monthly benefits for his own lifetime. The court held that a transfer took place when the election was made. However, here the employee contributed part of the funds out of which the benefits were to be paid. On this point alone the case does not qualify as authority here.

Other cases cited by the state in its briefs include *Cruthers* v. *Nuld*, 14 N. J., 497, 103 A (2d), 153 (1954); *In re Brachett's Estate*, 342 Mich., 195, 69 N. W. (2d), 164 (1955); *Dodge* v. *District of Columbia*, Tax Court, No. 1640 and 1641; *In re Stone's Estate*, 10 Wis. (2d), 467, 103 N. W. (2d), 663 (1960). The *Cruthers case* was decided in a "succession theory" jurisdiction and so is not extremely helpful here. In that case the transfer of a death benefit to a beneficiary was held taxable where the employee died prior to retirement. While the decedent had no immediate lifetime rights in any funds and would have lost his ultimate rights in the event of loss of employment, the vesting of the property in the employee was found in the employer's surrender of its rights to return of its contributions.

The case *In re Brachett's Estate*, is an "ownership theory" case which presents several factors present in the problem before us. The employer had established a profit-sharing plan

consisting entirely of an employer's contributions. Under the plan if the employee quit, retired or suffered prolonged illness he was entitled to his proportionate share under the plan. In this respect the plan is similar to the Lamson & Sessions Co. plan. However, in *Brachett's Estate*, it is clear that it was "impossible at any time * * * for any part of the fund or the income thereof to revert to, or inure to the benefit of, the employer, either directly or indirectly, or to be used for or diverted to purposes other than the exclusive benefit of the participants or their beneficiaries." 69 N. W. (2d), 169 (1955). Because of this fact the question of the ownership of the fund was not a difficult one. The court held that when the employee died before retirement the property that passed to the beneficiary was that of the decedent.

In *Dodge* v. *District of Columbia*, a fact situation similar to that in *Cameron Estate*, 15 Pa. D & C (2d), 557 (1958), is presented. The company agreed to pay certain officers their annual salary for a period of ten years after retiring, or in the event of their deaths to pay the same to designated beneficiaries. The court held that the sum passing to the beneficiaries was taxable and in its decision cited *Dolak* v. *Sullivan*, 145 Conn., 497, 144 A (2d), 312. This appears to be a "succession theory" decision as the *Dolak* decision had been. From the opinion it seems that the decedent was given the post-retirement benefits in return for his agreement to serve as an executive officer until retirement and then to give the company the benefit of his advice and counsel thereafter. The payments were not a gratuity from the company. Therefore, the receipt by the beneficiary of after death benefits was the transfer of property intended to take effect in possession and enjoyment after the death of the employee.

The *Estate of Stone* presents a fact situation similar to those in the *Harbord* and *Endemann Estate cases*. The company established a retirement plan for its employees. All contributions were made by the company. The company reserved the right to amend, modify or terminate the plan, but the trust fund could not revert to the company. The employee made an election under the joint and survivorship option, whereby he received a smaller pension for his life, but on his death the smaller pension would be continued to be paid to his widow for

her life. In holding that the benefits passing to the beneficiary were taxable under the Wisconsin Inheritance Tax Law, the court declared that the decedent had an interest in the benefits paid to the beneficiary. It is not stated that the decedent was the owner of the benefits, and, therefore, it appears that this is a "succession theory" decision.

### THE APPLICABLE LAW

In the light of the foregoing authorities, it appears that in the taxation of retirement income benefits, two theories can be used. In the leading Ohio case in this area, *Daniel's Estate*, the "ownership" theory was applied. In other cases, not dealing with retirement income benefits, it appears that the "ownership" theory has also been followed in Ohio. *In re Heine's Estate* and *In re Estate of Hazelton*. Under the "ownership" theory the decedent must have an interest in the property at his death. In the present case the estate contends that the decedent had no interest in the proceeds of the annuity policies. If this is true, there should be no inheritance tax under the "ownership" theory, while there could still be a tax under the "succession" theory.

The Pennsylvania cases, *Enbody Estate*, 85 Pa. D & C, 49 (1953) and *Burke Estate*, 85 Pa. D & C, 56 (1953), are the only cases the writer has found in which taxation of retirement income benefits has been denied. In the *Enbody Estate case*, the employee had no right to the retirement income benefit fund at any time. It did not pass to his estate at his death if he failed to designate a beneficiary. In the *Burke Estate case*, a similar situation was present. The employee had only the right to designate a beneficiary. In both cases it is clear that the company owned the funds and the employee had no interest in them.

In the present case there are several factors which show that the employee had an interest in the benefits. He had the vested right to have the policies assigned and delivered to him if his employment with the company should terminate prior to retirement. At retirement the employee became the owner of the policies and could deal directly with the company which issued them. If the employee failed to designate a beneficiary, or if the beneficiary predeceased him, the proceds of the policies were to be paid to the employee's administrator or executor.

On the basis of these factors the present case is distinguishable from the *Enbody Estate* and the *Burke Estate*. However, if these factors do not suffice to give the decedent an interest in the annuity contracts, then the benefits payable to the designated beneficiary would not be subject to Ohio Inheritance Tax. Since the present case is distinguishable from *Enbody Estate* and *Burke Estate*, there would seem to be no reason why the commuted value of the nine annuity policies, purchased by the Lamson & Sessions Co. entirely with its funds and paid to the contingent beneficiary, Florence L. Patterson, at the death of her husband, Robert G. Patterson, following his retirement, should not be taxable under Section 5731.02, Revised Code, of the Ohio Inheritance Tax Law.

CONCLUSION

Proceeds are subject to tax under Section 5731.02, Revised Code.