THE SEYMOUR TRUST COMPANY, ADMINISTRATOR C.T.A. (ESTATE OF RAY E. FULTON), ET AL. *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., MURPHY, ALCORN, COMLEY and SHANNON, JS.

Argued October 15—decided December 23, 1964

*Charles J. Parker* and *Harold E. Drew,* with whom was *Michael J. Dorney,* for the appellants (plaintiffs).

*Irving L. Levine,* inheritance tax attorney, with whom, on the brief, were *Harold M. Mulvey,* attorney general, and *Robert J. Hale,* first assistant tax commissioner, for the appellee (defendant).

COMLEY, J. This is an appeal by the plaintiffs from a judgment of the Superior Court sustaining a decree of the Probate Court for the district of

Woodbury holding that certain payments to be made to the widow of Ray E. Fulton and to his only son were transfers subject to the Connecticut succession tax. There is no dispute about the facts, all of which, as set forth in the reasons of appeal, were admitted by the tax commissioner.

Fulton and his sister-in-law owned all the capital stock of Old Hundred, Inc., which was engaged in the manufacture and sale of ice cream on a large scale at a plant in Southbury. On September 14, 1953, they transferred all their stock to Foremost Dairies, Inc., a New York corporation, receiving in exchange therefor large blocks of common and preferred stock in the latter company. On the same day, Fulton and his sister-in-law, as an incident to the sale of the stock and to protect the purchaser from competition with them, entered into a written agreement that for a period of twelve and one-half years they would not compete in the ice cream business with the purchaser within a radius of 150 miles of Southbury. In return for that promise, the purchaser agreed to pay to each of the two sellers the sum of $9600 per annum until each had received total payments of $120,000. The contract then provided as follows: "The death of either of the parties of the first part [the sellers] shall be deemed and construed as continuing performance as to said party so dying, and the sum so payable to said deceased party shall then be payable to the heirs or assigns of such deceased party, or to such persons or corporations as such party may by his last will and testament appoint, provided, however, that the immediate family or heirs of such deceased party do not themselves compete in such territory during such period of time that payments are being made under this agreement."

Fulton received payments at the rate of $9600 per annum from September 14, 1953, until his death on November 21, 1961. At that time, there were payments yet to be made for approximately four and one-half years. He appointed no one in his will to receive them, and therefore they will continue to be made to his widow and only son, if they refrain from competition with Foremost Dairies. The Probate Court and the Superior Court sustained the claim of the tax commissioner that the payments to be made to the widow and the son are taxable under General Statutes § 12-341 (d) as transfers "by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor". The plaintiffs dispute this claim, their argument being, in substance, that there was nothing transferred to the widow and the son by the decedent and that any payments received by them after his death represented moneys earned by them through their forbearance from competition.

The quoted language of the statute has been in effect since 1915. Its legislative history and rather frequent construction by this court was recently and extensively reviewed in *Pape* v. *Sullivan,* 151 Conn. 39, 42, 193 A.2d 480. As was there pointed out (p. 43), it "is the right of possession or enjoyment of property rather than the vesting in interest which is the basis of the tax". *Cochran* v. *McLaughlin,* 129 Conn. 176, 179, 27 A.2d 120; *Miller* v. *Connelly,* 142 Conn. 144, 149, 112 A.2d 202. In most instances where the transfer is taxable, the transferee succeeds to something which the decedent had owned. See *Connelly* v. *Waterbury National Bank,* 136 Conn. 503, 508, 72 A.2d 645. This, however, is not necessary to the operation of the statute. In *Dolak* v. *Sullivan,* 145 Conn. 497, 502, 144 A.2d 312,

we said: "It is not necessary that the specific property received by the beneficiary shall have been previously owned by the decedent. He may, as was the case here, part with a valuable consideration owned by him in exchange for a contractual obligation of a third party running directly to the transferee." See *Borchard* v. *Connelly*, 140 Conn. 491, 493, 101 A.2d 497.

The noncompetitive agreement made by the decedent with Foremost Dairies is not the result of expert draftsmanship, but it seems apparent to us that the consideration for the annual payments was really furnished by the decedent. It was a part of the whole transaction, the main part of which was the transfer of stock by the decedent and his sister-in-law. The provision for annual payments was incidental and undoubtedly adopted with a view to the effect of federal income taxation. Foremost Dairies could have exacted a binding and enforceable promise from the decedent not to compete as a condition of the transfer of the stock. The device of annual payments was not necessary to the validity of that promise. All the economic benefits arising from the provisions for annual payments were created by the decedent, and when the right to receive them passed to his widow and son, there was a transfer from him to them. It is true that they would not continue to receive the payments unless they refrained from competition. But that does not mean that they were earning the payments or furnishing the real consideration for them. By entering into competition with Foremost Dairies they would be forfeiting their rights to the payments by operation of a condition subsequent expressly provided for in the contract. The possibility of such a forfeiture does not affect the taxability

of the transfer in view of the provision in General Statutes § 12-354 that "[w]hen an estate or interest may be divested by the act or omission of the transferee, it shall be taxed as if there were no possibility of divesting."

There is no error.

In this opinion the other judges concurred.