DOROTHY C. ARCHIBALD ET AL., EXECUTRICES (ESTATE OF JULIA G. CLARK) *v.* JOHN L. SULLIVAN, TAX COMMISSIONER

KING, C. J., MURPHY, ALCORN, SHANNON and HOUSE, Js.

Argued May 6—decided June 15, 1965

*John S. Murtha,* with whom were *James P. Sandler* and *John E. Silliman,* for the appellants (plaintiffs).

*Paige J. Everin,* inheritance tax attorney, with whom were *Robert J. Hale,* first assistant tax commissioner, and, on the brief, *Harold M. Mulvey,* attorney general, for the appellee (defendant).

KING, C. J. The sole issue in this case, which comes to us on a reservation from the Superior Court on stipulated facts, is whether a certain inter vivos transfer in trust made by Julia Gilman Clark, the plaintiffs' testatrix, is subject to a succession tax, under and by virtue of § 12-341 (d) of the General Statutes, as a transfer "by gift or grant intended to take effect in possession or enjoyment at or after the death of the transferor."

George S. Gilman died in 1886, and under the terms of his will the major portion of his estate was placed in trust for the benefit of his wife "during the full term of her natural life."[1] At the death of his wife, the trust corpus was to be divided into two equal parts, the first to go to his son, George H. Gilman, outright and absolutely, and the second to go to a named corporate trustee to be held by it in trust for the benefit of his daughter, Julia Gilman Clark, for life "and, at her death, the principal to . . . [be paid over outright and absolutely to] such beneficiaries as she may choose to designate by will, and if she dies intestate then to her heirs at law". The gift over to the "heirs at law" of Mrs. Clark was void under a Statute against Perpetuities, which has since been repealed but which was in force at the date of the death of George S. Gilman. Rev. 1875, p. 352, § 3 (repealed, Public Acts 1895,

[1] No succession tax is claimed as to George S. Gilman's estate, as such, since Connecticut first imposed a succession tax after Mr. Gilman's death. Lyman, Inheritance Taxation in Connecticut (1932), p. 2.

c. 249). The opportunity which George S. Gilman attempted to give Mrs. Clark, if she died intestate, to have the trust corpus, by virtue of his will, go "to her heirs at law" was denied her. Upon the death of Mrs. Gilman intestate in 1919, the entire reversion was in George H. Gilman and Mrs. Clark, although it was then subject to destruction by the exercise of her testamentary power of appointment. George H. Gilman transferred his one-half interest in the reversion to his sister, Mrs. Clark, in 1925, thus leaving the entire reversion in her. *Bridgeport-City Trust Co.* v. *Sullivan,* 146 Conn. 184, 187, 148 A.2d 549. In 1941, she transferred the entire reversion in trust for the benefit of her two daughters, the issue of her two daughters, and certain other beneficiaries. By a covenant in the trust instrument she irrevocably agreed not to exercise, nor to attempt to exercise, the testamentary power of appointment conferred upon her in the will of her father. In 1944, pursuant to a then newly enacted statute, now § 45-120 of the General Statutes, she executed a valid and complete release of her power of appointment. Thus, not later than 1944, Mrs. Clark had completely divested herself of any control over, or interest in, the entire reversion. See cases such as *Morgan Guaranty Trust Co.* v. *Huntington,* 149 Conn. 331, 348, 179 A.2d 604. On April 18, 1963, Mrs. Clark died testate, but of course without having exercised, or having attempted to exercise, the general testamentary power of appointment, and on May 20, 1964, the Probate Court for the district of Hartford held taxable the property which Mrs. Clark had transferred in trust in 1941. The plaintiffs, as executrices of the will of Mrs. Clark, appealed from the probate decree to the Superior Court, and from that appeal this reservation arises.

The Probate Court would have been correct in its holding that the transfer in trust of the reversion was subject to the succession tax if the transfer was "intended to take effect in possession or enjoyment at or after the death of the transferor." General Statutes § 12-341 (d). For convenience, we first consider the second portion of the quoted clause. While it is true, as the plaintiffs claim, that title to the reversion vested absolutely in the trustees not later than 1944 and long before Mrs. Clark's death, this fact, alone, does not remove the transfer from the scope of § 12-341 (d). The basis of the tax is the privilege of succeeding to the possession or enjoyment of the property, not the vesting in interest of that property. *Blodgett* v. *Union & New Haven Trust Co.*, 97 Conn. 405, 410, 116 A. 908; *Dolak* v. *Sullivan*, 145 Conn. 497, 502, 144 A.2d 312; *Pape* v. *Sullivan*, 151 Conn. 39, 43, 193 A.2d 480. The life estate in the testamentary trust created for Mrs. Clark remained in her throughout her lifetime, in accordance with the terms of her father's will. Quite properly there is no claim that the reversion did not take effect in possession or enjoyment at her death.

The plaintiffs' basic claim is that it was not the intent of Mrs. Clark, but that of her father, which caused the reversion so to take effect at her death. The plaintiffs assign two reasons for this claim. The first is that there must be a causal relationship between the settlor's intent and the taking effect in possession or enjoyment in order for the transfer in trust to be subject to the succession tax imposed by § 12-341 (d), under which the defendant bases his claim of taxability. The second is that there is no such causal relationship in this case. This two-fold contention must be sustained.

First, it is clear from the wording of the statute that the intent and the taking effect in possession or enjoyment must be causally related. That is, the taking effect in possession or enjoyment of the property transferred must be caused by an intentional act of the transferor, not by the independent act of someone else. See *Connelly* v. *Waterbury National Bank,* 136 Conn. 503, 508, 72 A.2d 645. To hold otherwise would be to render the word "intended" in the statute superfluous. It is an elementary principle of statutory construction that "[n]o word in a statute should be treated as superfluous, void or insignificant unless there are impelling reasons . . . why the principle cannot be followed." *General Motors Corporation* v. *Mulquin,* 134 Conn. 118, 126, 55 A.2d 732.

Second, under the terms of her father's will, Mrs. Clark had an equitable life estate under the trust established for her upon the death of her mother, and, after the 1925 conveyance of her brother, she also owned the reversion in fee. Unless she could terminate that equitable life estate, she could not control the time when the reversion would take effect in possession and enjoyment. The only time it could take such effect was at her death, and the time when the reversion would take effect was fixed by the terms of her father's will, and not by any act of hers. There was not, nor could there be, any causal relationship between the intent of Mrs. Clark, as the settlor of the trust, and the time when the transfer took effect in possession and enjoyment. That her intent may have coincided with that of her father was immaterial since his intent and not hers was the operative factor in fixing the time at which the transfer took effect in possession and enjoyment.

It is the tax commissioner's claim that Mrs. Clark could have terminated the trust established in her father's will and, therefore, that it was within her power to acquire absolute title to the property and thus, inter alia, determine when the reversion would take effect in possession or enjoyment. This claim is clearly unsound. Before a testamentary trust may be terminated, three conditions must be satisfied: (1) all parties in interest must unite in seeking the termination; (2) the reasonable ultimate purposes of the trust must have been accomplished; and (3) no fair and lawful restriction imposed by the testator will be nullified or disturbed by the termination of the trust. *Adams* v. *Link*, 145 Conn. 634, 638, 145 A.2d 753. Even if the first of these conditions could have been satisfied, it is clear that important and proper purposes of the trust's creation were not, and could not be, satisfied prior to Mrs. Clark's death. It is obvious from the will of George S. Gilman that he did not intend that his daughter be entrusted with the control of the principal of the trust, which would be the case if the trust were terminated. Rather, he specifically provided for the appointment of a corporate trustee in the testamentary trust to be established upon Mrs. Gilman's death. Particularly significant is the fact that where he did intend an outright gift, as in the case of his son, he did so in clear and unmistakable language. Had George S. Gilman intended to entrust his daughter "with the handling of any part of the corpus, . . . [he] would have so provided by a simple, outright gift", such as the one to his son. *Adams* v. *Link*, supra, 640. Also of some significance is the fact that the corporate trustee was not authorized to invade the principal of Mrs. Clark's trust, although such invasion had

been expressly authorized during Mrs. Gilman's life in the trust established for her. The testamentary trust established for Mrs. Clark was not subject to termination by her.

Since the settlor, Mrs. Clark, had no control over when the reversion would take effect in possession and enjoyment, her intent, whatever it was, could not have been, and was not, an operative factor in the determination as to when the transfer would so take effect. It necessarily follows that the transfer in trust is not subject to the succession tax under General Statutes § 12-341 (d). *Connelly* v. *Waterbury National Bank,* supra, 509.

For the foregoing reasons, the question in the reservation "Did Julia Gilman Clark intend the possession and enjoyment of the property transferred in trust in 1941 to take effect at or after her death?" is not material and need not be answered.

To the question in the reservation "Is the transfer of the property which Julia Gilman Clark conveyed in trust in 1941 subject to Connecticut succession taxation as a transfer intended to take effect in possession or enjoyment at or after the death of the decedent?" we answer "No".

No costs will be taxed in this court in favor of any party.

In this opinion the other judges concurred.